IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

––––––––––––––––––

No. 23-1

––––––––––––––––––

UNITED STATES OF AMERICA,

*Appellee*,

v.

JAMES H. ROANE JR.,

*Appellant*.

––––––––––––––––––

Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond
*The Honorable David J. Novak, District Judge*

––––––––––––––––––

BRIEF OF THE UNITED STATES

––––––––––––––––––

Jessica D. Aber
United States Attorney

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400

*Attorneys for the United States of America*

**Table of Contents**

**Page**

Table of Authorities ...................................................................................... iii

Introduction ....................................................................................................1

Issues Presented ............................................................................................3

Statement of the Case......................................................................................4

     A.     Roane is indicted, convicted, and sentenced ........................................4

     B.     Roane files a motion to vacate his § 924(c) convictions......................8

     C.     The district court denies Roane's motion...........................................11

Summary of Argument ..................................................................................14

Argument.......................................................................................................17

I.     Roane's challenge to his § 924(c) convictions is procedurally
     defaulted.................................................................................................17

     A.     Narcotics distribution conspiracy under § 846 is a drug
            trafficking crime.................................................................................18

     B.     CCE murder under § 848(e)(1)(A) is a drug trafficking crime...........19

     C.     CCE murder under § 848(e)(1)(A) is a crime of violence. ................23

     D.     VICAR murder is a crime of violence. ...............................................33

     E.     VICAR maiming is a crime of violence...............................................39

     F.     Roane cannot demonstrate prejudice. ................................................41

Conclusion ....................................................................................................53

Statement Regarding Oral Argument ..........................................................54

Certificate of Compliance ........................................................................54

# Table of Authorities

## Cases

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)........................................31

*Borden v. United States*, 141 S. Ct. 1817 (2021).......................... *passim*

*Bousley v. United States*, 523 U.S. 614 (1998).....................................16

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)........................................39

*Burrage v. United States*, 571 U.S. 204 (2014) ...................................31

*Greer v. United States*, 141 S. Ct. 2090 (2021) ..................................39

*Hedgpeth v. Pulido*, 555 U.S. 57 (2008)..............................................40

*In re Hall*, 979 F.3d 339 (5th Cir. 2020)..............................................31

*In re Irby*, 858 F.3d 231 (4th Cir. 2017) ........................................ 23, 32

*Johnson v. United States*, 559 U.S. 133 (2010) ...................................23

*Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562 (4th Cir. 2021) ...........16

*Mathis v. United States*, 136 S. Ct. 2243 (2016) .................................31

*Ring v. Arizona*, 536 U.S. 584 (2002)..................................................31

*Rosemond v. United States*, 572 U.S. 65 (2014)..................................28

*Said v. United States*, 2021 WL 3037412 (E.D. Va. July 19, 2021) .....41

*Schad v. Arizona*, 501 U.S. 624 (1991) ...............................................33

*Stokeling v. United States*, 139 S. Ct. 544 (2019)................................23

*Thompson v. United States*, 924 F.3d 1153 (11th Cir. 2019) ...............29

*United States v. Adkins*, 937 F.2d 947 (4th Cir. 1991) .........20-21, 34, 36

*United States v. Ali*, 991 F.3d 561 (4th Cir. 2021) .......................... *passim*

*United States v. Allred*, 942 F.3d 641 (4th Cir. 2019) ...................... 23, 38

*United States v. Alvarez*, 266 F.3d 587 (6th Cir. 2001)........................25

*United States v. Baez-Martinez*, 950 F.3d 119 (1st Cir. 2020)..............29

*United States v. Banks*, 29 F.4th 168 (4th Cir. 2022) ...........................39

*United States v. Battle*, 927 F.3d 160 (4th Cir. 2019) ...................... 23, 38

*United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) ...........................................29

*United States v. Boyd*, 55 F.4th 272 (4th Cir. 2022) ...............................................46

*United States v. Bryant*, 949 F.3d 168 (4th Cir. 2020) ............................................23

*United States v. Cannon*, 987 F.3d 924 (11th Cir. 2021) ................................. 18-19

*United States v. Capers*, 20 F.4th 105 (2d Cir. 2021) .............................................44

*United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013) .....................................21

*United States v. Cotton*, 535 U.S. 625 (2002) .......................................................39

*United States v. Crawley*, 2 F.4th 257 (4th Cir. 2021) ...........................................42

*United States v. Davis*, 139 S. Ct. 2319 (2019) .............................................. *passim*

*United States v. Ebert*, 61 F.4th 394 (4th Cir. 2023) ..............................................46

*United States v. Eldridge*, 2 F.4th 27 (2d Cir. 2021) ....................................... 18-19

*United States v. Fiel*, 35 F.3d 997 (4th Cir. 1994)..................................................35

*United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012) .............................................16

*United States v. Green*, 67 F.4th 657 (4th Cir. 2023)...................................... 17, 39

*United States v. Hager*, 721 F.3d 167 (4th Cir. 2013)............................................22

*United States v. Hare*, 820 F.3d 93 (4th Cir. 2016).............................. 12, 18-19, 42

*United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022) ................................. 29-30

*United States v. Hastings*, 134 F.3d 235 (4th Cir. 1998).........................................40

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ............................................31

*United States v. Hopkins*, 310 F.3d 145 (4th Cir. 2002).........................................12

*United States v. Jackson*, 32 F.4th 278 (4th Cir. 2022) ................................... *passim*

*United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012) ........................................40

*United States v. Jones*, 935 F.3d 266 (5th Cir. 2019).............................................44

*United States v. Keene*, 955 F.3d 391 (4th Cir. 2020) ...................................... 32, 35

*United States v. Manley*, 52 F.4th 143 (4th Cir. 2022)................................... *passim*

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019)..................................... 23, 32

*United States v. McKinney*, 60 F.4th 188 (4th Cir. 2023) ......................................17

*United States v. Reavis*, 48 F.3d 763 (4th Cir. 1995) .............................................50

*United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010)........................................40

iv

*United States v. Roof*, 10 F.4th 314 (4th Cir. 2021) ................................... 22, 27, 35

*United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) ................................... 23, 38

*United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021) ...................................28

*United States v. Said*, 26 F.4th 653 (4th Cir. 2022)..........................................*passim*

*United States v. Savoires*, 430 F.3d 376 (6th Cir. 2005) ................................ 41, 43

*United States v. Simms*, 914 F.3d 229 (4th Cir. 2019)......................................18-19

*United States v. Smith*, 723 F.3d 510 (4th Cir. 2013) ...................................... 39, 52

*United States v. Stevens*, —F.4th —, No. 21-2044, 2023 WL 3940121,
    (3d Cir. June 12, 2023) ......................................................................................31

*United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008).........................................25

*United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996)......................................*passim*

*United States v. Zelaya*, 908 F.3d 920 (4th Cir. 2018) .................................... 35-36

## Statutes

18 U.S.C. § 2 ...................................................................................................... 3-4

18 U.S.C. § 924(c)(2) ....................................................................................... *passim*

18 U.S.C. § 924(c)(3)(A) .................................................................................. *passim*

18 U.S.C. § 1959 ...........................................................................................4-6, 32, 36

18 U.S.C. § 1959(a)(1)................................................................................ 1, 12, 31, 34

21 U.S.C. 801 ...............................................................................................10, 17, 19-20

21 U.S.C. § 846................................................................................................... *passim*

21 U.S.C. § 848(e)(1)(A) .................................................................................. *passim*

21 U.S.C. § 848(n)(1)(D) ...................................................................................25

28 U.S.C. § 2255 ............................................................................................... *passim*

28 U.S.C. § 2255(h)(2)...................................................................................... 38, 40

## Rules

Fed. R. App. P. 28(a)(8)(A) ...............................................................................46

**Introduction**

In 1993, a jury convicted the defendant, James Roane, Jr., for his role in a drug organization that was responsible for at least ten murders and additional maimings. Among other things, the jury found Roane responsible for four murders— the killings of Douglas Moody, Peyton Johnson, Louis Johnson, Jr., and Torrick Brown, Jr.—and convicted him of three counts of capital murder in furtherance of a criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A) ("CCE murder"); four counts of committing murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(1) ("VICAR murder"); one count of maiming in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(2) ("VICAR maiming"); and one count of conspiring to distribute narcotics, in violation of 21 U.S.C. § 846. The jury also convicted Roane of four counts of using a firearm in relation to both the narcotics conspiracy and each of the charged CCE and VICAR murders, in violation of 18 U.S.C. § 924(c). The jury sentenced Roane to death, as well as to multiple terms of life imprisonment.

After receiving authorization by a divided vote to file a successive petition under 28 U.S.C. § 2255, Roane moved to vacate his firearm convictions (Counts 6, 9, 12, and 15), arguing that they were invalid after *United States v. Davis*, 139 S. Ct. 2319 (2019), and *Borden v. United States*, 141 S. Ct. 1817 (2021).

The district court denied relief, explaining that all four of Roane's § 924(c)

convictions relied on a drug conspiracy predicate under § 846 and that three of the four challenged convictions (Counts 6, 9, and 12) relied on CCE murder predicates, all of which remain valid "drug-trafficking crimes" under 18 U.S.C. § 924(c)(2). Additionally, the court held that § 848(e)(1)(A) was a crime of violence because it requires—in every instance—proof of an intentional murder. The district court further concluded that VICAR murder—an offense underlying all four challenged § 924(c) convictions—is also a crime of violence, even after *Davis* and *Borden*.

Finally, the district court concluded that even if some predicate offenses were invalid after *Davis* or *Borden*, Roane failed to demonstrate any prejudice. Applying *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), the district court explained that Roane had to show more than a reasonable possibility that the jury *only* convicted him in reliance on the allegedly invalid predicates. As this Court has explained, on collateral review, when both valid and invalid predicates exist for a § 924(c) conviction, "ambiguity" about which predicate the jury relied on "is insufficient," and "the defendant 'must show not only that he *could* have been convicted under" the invalid predicate, "but also that he *was not* convicted under the" valid predicate. *Said*, 26 F.4th at 661 (citations omitted). But, the court explained, Roane had barely attempted such a showing and "[c]ommon sense dictate[d] that the jury had at least one of the[] valid predicates in mind when it convicted [Roane] on the § 924(c) Counts."

This commonsense conclusion flows from the most salient facts of this case. Roane was convicted of every offense underlying his § 924(c) convictions, including the narcotics conspiracy, three CCE murders, and four VICAR murders. Each CCE and VICAR murder involved a victim who was shot with a firearm, and the statutes themselves require a nexus between the murders and either drug trafficking or racketeering activity. In turn, the narcotics conspiracy relied on these same murders. Under *Said*, Roane cannot meet his burden of showing that the jury would not have convicted him of the § 924(c) counts relying on the still valid drug-trafficking predicates. So too regarding the VICAR murder predicates.

Roane disagrees, and now appeals. As explained below, this Court should affirm.

## Issues Presented

1.      Did the district court correctly conclude that Roane's § 924(c) convictions rely on valid drug trafficking crimes and crimes of violence?

2.      Did the district court correctly conclude that even if some of Roane's predicate offenses were invalid, he could still not meet his burden of demonstrating any prejudice?

**Statement of the Case**

**A.     Roane is indicted, convicted, and sentenced**

On July 20, 1992, Roane, along with six others, was charged in a 33-count indictment with the following offenses:

| Count | Offense | Statutory Provision |
|---|---|---|
| Count 1 | Conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base | 21 U.S.C. § 846 |
| Count 2 | Engaging in a continuing criminal enterprise | 21 U.S.C. § 848(a) |
| Counts 5, 8, and 11 | Capital murder in furtherance of a criminal enterprise | 21 U.S.C. § 848(e) and 18 U.S.C. § 2 |
| Counts 7, 10, 13, 14, and 16 | Commission of violent crimes in aid of racketeering activity | 18 U.S.C. § 1959 and 18 U.S.C. § 2 |
| Counts 6, 9, 12, and 15 | Use of a firearm in relation to a crime of violence or a drug-trafficking offense | 18 U.S.C. § 924(c) and 18 U.S.C. § 2 |
| Count 32 | Possession with intent to distribute cocaine base | 21 U.S.C. § 841(a)(1) |

Each firearm offense charged in Counts 6, 9, 12, and 15—the only convictions at issue in this appeal—relied on multiple underlying predicates.

Count 6 charged Roane with using, or aiding and abetting the use, of a firearm on or about January 13, 1992, during and in relation to the following crimes of violence or drug trafficking offenses:

| Count | Predicate Offense |
|---|---|
| Count 1 | 21 U.S.C. § 846 |

| Count 5 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Douglas Moody) |
| Count 7 | 18 U.S.C. § 1959 (VICAR murder of Douglas Moody) |

Count 9 charged Roane with using, or aiding and abetting the use, of a firearm on or about January 14, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
| --- | --- |
| Count 1 | 21 U.S.C. § 846 |
| Count 8 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Payton Maurice Johnson) |
| Count 10 | 18 U.S.C. § 1959 (VICAR murder of Payton Maurice Johnson) |

Count 12 charged Roane with using, or aiding and abetting the use, of a firearm on or about January 29, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
| --- | --- |
| Count 1 | 21 U.S.C. § 846 |
| Count 11 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Louis J. Johnson, Jr.) |
| Count 13 | 18 U.S.C. § 1959 (VICAR murder of Louis J. Johnson, Jr.) |

Count 15 charged Roane with using, or aiding and abetting the use, of a firearm on or about February 15, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
| --- | --- |
| Count 1 | 21 U.S.C. § 846 |

| Count 14 | 18 U.S.C. § 1959 (VICAR murder of Torrick Brown, Jr.) |
| Count 16 | 18 U.S.C. § 1959 (VICAR maiming of Martha McCoy) |

These charges stemmed from Roane's leadership role, along with Cory Johnson and Richard Tipton, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

As relevant to this appeal, the jury received the following instructions highlighting the crime of violence or drug trafficking predicates underlying each of the four § 924(c) counts:

> In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in **Counts ... Six, Nine, Twelve, Fifteen** ... of the indictment, the government must prove the following two essential elements beyond a reasonable doubt: One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.
>
> The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.
>
> The term "drug trafficking crime" means an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances. The offenses alleged in Counts Three, Four, **Five**, **Seven**, **Eight**, **Ten**, **Eleven**, **Thirteen**, **Fourteen**, **Sixteen** ... [and] Thirty-two are crimes of violence or drug trafficking crimes.

JA237 (emphasis added).

In February 1993, the jury convicted Roane of all three capital murders under § 848(e)(1)(A) (Counts 5, 8, and 11); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 7, 10, 13, 14, and 16); using a firearm in relation to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 6, 9, 12, and 15); and one count of possession of cocaine base with the intent to distribute under § 841(a)(1) (Count 32). Following a penalty hearing on the capital murder counts, the jury recommended that Roane be sentenced to death for one of the three murders for which he was convicted under § 848(e)—the murder of Douglas Moody.

In accordance with the jury's recommendation, the Honorable James R. Spencer sentenced Roane to death. After sentencing, the district court refused to order the defendants' execution on the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect.

All three defendants appealed their convictions and sentences and the government cross-appealed the district court's stay of execution of the death sentences. This Court affirmed the defendants' convictions and sentences, with the exception of the § 846 cocaine conspiracy (Count 1), which it vacated as being a

lesser included offense of the § 848 continuing criminal enterprise conviction (Count 2). *See United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996). The Court also reversed the district court's refusal to execute the defendants' death sentences. *Id*. at 903.

**B.    Roane files a motion to vacate his § 924(c) convictions.**

In May 2020, Roane filed a motion for authorization to file a successive petition under § 2255 challenging his four § 924(c) convictions under *Davis* and *Borden*. The government opposed the motion, and after multiple rounds of briefing and two orders holding the case in abeyance, this Court granted the application by a 2-1 vote.

In February 2022, Roane filed his § 2255 motion in the district court, arguing that his four § 924(c) convictions were invalid. JA10–JA90. Specifically, Roane argued that the predicate offenses underlying his convictions—VICAR murder or maiming, in violation of § 1959(a), and CCE murder, in violation of § 848(e)(1)(A)—fail to qualify as crimes of violence under § 924(c)(3)(A).

Roane also urged the court to adopt a framework for assessing multi-predicate § 924(c) convictions that required absolute certainty regarding which predicate the jury relied on to convict, a legal theory that many other defendants pressed and that this Court ultimately rejected. Under Roane's theory, the question of which predicate a jury relied on is not a question of fact but instead is a question of law. And the question of law would be answered by using the "modified categorial approach" to

determine on which predicate offense the jury necessarily relied. JA17. As Roane explained, "[u]nder the modified categorical approach, an offense cannot qualify as a § 924(c) predicate unless the *Shepard* documents establish with 'certainty' that the defendant was 'necessarily' convicted of an offense that meets the elements-based test for 'crimes of violence.'" *Id.*; *see also* JA18 ("W]hen it cannot be conclusively determined that the defendant was convicted of an offense the elements of which categorically qualify as a 'crime of violence,' the court should assume he was convicted of the 'least serious' offense criminalized the underlying statute."); *id.* ("a § 924(c) conviction cannot be sustained if one of the possible predicates is not categorically a crime of violence."); JA19 ("the *Shepard* documents do not establish with "certainty" which potential predicates support the jury's ultimate § 924(c) determinations.").

The government opposed Roane's motion, first arguing that he had procedurally defaulted any challenge to his firearm convictions and that even if he could show "cause" for his default, he still would not be able to demonstrate prejudice.

As to prejudice, the government argued that § 846 (Count 1) and § 848(e)(1)(A) (Counts 5, 8, and 11) were "drug-trafficking crimes," the definition of which *Davis* did not alter. JA197 (citing 18 U.S.C. § 9]24(c)(2)). Thus, because three of Roane's four § 924(c) convictions (Counts 6, 9, and 12) relied on

§ 848(e)(1)(A) predicates, and all four of those convictions were supported by an § 846 predicate, his firearm convictions remained valid notwithstanding *Davis*. *Id.* The government further argued that CCE murder and VICAR murder and maiming were crimes of violence under § 924(c)(3)(A).

Finally, the government argued that even if the court concluded that some of the offenses underlying Roane's § 924(c) convictions were invalid, his motion would still fail under governing precedent. Contrary to the theory urged by Roane, harmless-error review did not require absolute certainty regarding which predicate the jury relied. The government explained that *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021), had rejected that very argument under plain error review and the recent decision in *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), confirmed that "ambiguity" and "mere uncertainty" were insufficient to establish a "substantial and injurious" effect on collateral review. JA205–JA206. Thus, under *Said*, Roane was required to show more than a reasonable possibility that the jury *only* found him guilty on Counts 6, 9, 12, and 15 in reliance on the invalid predicate. Because, the government argued, Roane had not even attempted to make that showing, his motion—even assuming the invalidity of some predicate offenses—necessarily failed. The government also explained that Roane's plea for the district court to use the modified categorical approach to determine on which predicate offense the jury necessarily relied was foreclosed by both *Ali* and *Said*. JA207–JA208.

### C.   The district court denies Roane's motion.

In November 2022, the district court denied Roane's § 2255 motion. JA227–
JA247.[1] The court first held that Counts 6, 9, and 12 all relied on valid "drug
trafficking" and "crime-of-violence" predicates. JA238–239. Cross-referencing its
earlier opinion in *Tipton*, the court explained that § 924(c)(2) defines "drug
trafficking crime" to include "any felony punishable under the Controlled
Substances Act (21 U.S.C. 801 et seq.)," which easily encompassed Roane's three
convictions under § 848(e)(1)(A) (Counts 5, 8, and 11). JA239 (citing *Tipton* opinion
at JA262–JA271).

Next, the court explained that in addition to being a "drug trafficking crime"
§ 848(e)(1)(A) was also a crime of violence under § 924(c)(3)(A). The court rejected
Roane's *Borden* argument that one could commit a CCE murder recklessly,
explaining that "the statute explicitly requires an intentional killing created by the
defendant's intentional behavior, satisfying the heightened *mens rea* requirement."
JA267. As the court explained, "[t]he statute provides that anyone engaging in a
CCE 'who *intentionally* kills or counsels, commands, induces, procures or causes
the *intentional* killing of an individual and such killing results' is subject to

---

[1] About one month earlier, the district court denied codefendant Richard Tipton's
motion seeking similar relief. *See* JA248–JA277 (*Tipton* opinion). In denying
Roane's § 2255 motion, the district court incorporated its opinion in Tipton's case.
*See* JA239.

conviction of CCE murder." *Id*. (quoting § 848(e)(1)(A)).

Next, the court held that § 848(e)(1)(A) required sufficient use of force to qualify under § 924(c)(3)(A) because it "requires an intentional killing and that the killing actually results. Thus, the elements of the offense require infliction of 'the greatest physical injury imaginable–death.'" JA270 (quoting *United States v. Jackson*, 32 F.4th 278, 287 (4th Cir. 2022)). The court further explained that the statute's prohibition on counseling, commanding, inducing, procuring, or causing an intentional killing was akin to aiding and abetting liability, and that aiding and abetting a crime of violence qualifies under § 924(c)(3)(A). JA270 (citing *Ali*, 991 F.3d at 574); *see also Said*, 26 F.4th at 661.

The court next concluded that Roane's drug distribution conspiracy conviction (Count 1)—a predicate supporting each of Counts 6, 9, 12, and 15—was also a drug trafficking crime under § 924(c)(2). JA240 (citing *United States v. Hare*, 820 F.3d 93, 97, 106 (4th Cir. 2016)). The court rejected the argument that it could not consider Count 1 because this Court had vacated it on appeal for double jeopardy reasons. As the court explained, a conviction under § 924(c) does not depend on a defendant being convicted of the underlying crime. JA240 (citing *United States v. Hopkins*, 310 F.3d 145, 153 (4th Cir. 2002)). Moreover, the jury convicted Roane of conspiring to trafficking at least 50 grams of crack cocaine and this Court's vacatur on appeal was rooted solely in the fact that the conspiracy offense was a lesser

included of the CCE conviction, not in any defect in the prosecution. *Id*. The court noted, however, that although the jury had received the indictment which included Count 1 as a predicate offense, the jury instructions did not include that count. As discussed below, however, the proof of the continuing criminal enterprise necessarily encompassed the drug conspiracy.

Finally, the court held that VICAR murder, in violation of § 1959(a)(1)—a predicate offense supporting each of Counts 6, 9, 12, and 15—was a crime of violence. JA241. The court first held that VICAR murder premised on a violation of Virginia's first and second-degree murder statute qualified as a crime of violence. JA243 (citing *United States v. Manley*, 52 F.4th 143 (4th Cir. 2022)). However, because the VICAR murder counts did not cross-reference an underlying state or federal murder charge, the court, "out of an abundance of caution," looked to other potential sources for the murder charge. *Id*. In doing so, the court concluded that common law murder requires the intentional killing of another and therefore qualifies as a crime of violence. JA244. The court also held that first-degree federal murder, in violation of 18 U.S.C. § 1111(a), is a crime of violence under this Court's precedent. JA245 (citing *Jackson*, 32 F.4th at 287). Thus, the court concluded that Roane's "VICAR Murder Conviction constitutes a crime of violence whether the fourth element -- the crime of violence alleged -- stems from a violation of Virginia murder statute, common-law murder or the federal murder statute." JA245–JA246.

Having determined that all of Roane's CCE murder and VICAR murder predicates were valid, the court next held that Roane "would still fail to show any prejudice [even] if some of the convictions constituted valid predicates and some did not." JA246. As the court explained, under this Court's precedent, even if some of his predicates did not qualify, Roane would still have to "'show more than a reasonable possibility that the jury *only* found him guilty' in Counts Six, Nine, Twelve and Fifteen, because it improperly considered one of the listed counts to be a crime of violence." *Id*. (quoting *Said*, 26 F.4th at 662). The court concluded that "[c]ommon sense dictates that the jury had at least one of these valid predicates in mind when it convicted [Roane] on the § 924(c) Counts" and that he had offered no "sufficient reason" for concluding otherwise. *Id*.

This appeal followed.

## Summary of Argument

Roane's challenge to the predicates underlying his § 924(c) convictions fails for several reasons. First, three of Roane's § 924(c) convictions (Counts 6, 9, and 12) rely on CCE murder predicates under § 848(e)(1)(A), which the district court correctly concluded are drug-trafficking crimes under § 924(c)(2), a provision that is unaffected by *Davis* and *Borden*, and all four of § 924(c) convictions encompass drug conspiracy predicates, which also are valid under § 924(c)(2). The Court can affirm all four challenged convictions without even considering *Davis* and *Borden*.

Second, in addition to being a drug trafficking crime, § 848(e)(1)(A) is a crime of violence. Every prosecution under § 848(e)(1)(A) requires the government to prove an intentional murder. Because murder is the quintessential crime of violence, and because an intentional murder cannot be committed recklessly, § 848(e)(1)(A) satisfies both *Davis* and *Borden*. To the extent the capital gateway factors are viewed as lowering the *mens rea* for § 848(e)(1)(A) to a standard equivalent to deprave-heart murder, this Court has already held that depraved-heart murder falls within § 924(c)(3)(A).

Third, all four of Roane's § 924(c) convictions rely on VICAR murder predicates under § 1959(a). In several decisions, this Court has held that VICAR murder premised on a violation of Virginia's first- and second-degree murder statute qualifies as a crime of violence, and that first-degree federal murder under § 1111(a), qualifies as well. Every possible standard that would support liability for a VICAR murder charge in Roane's case satisfies § 924(c)(3)(A). Moreover, to be convicted under § 1959(a) a defendant must have the purpose to increase or maintain his position in the enterprise. Thus, the VICAR statute carries its own heightened *mens rea* element, which precludes any argument that one may violate the statute recklessly.

Finally, even if the Court concludes that some of the underlying predicates are no longer valid, Roane's challenge would still fail. Under *United States v. Said*, 26

F.4th 653 (4th Cir. 2022), ambiguity and uncertainty are not enough on collateral review for Roane to show a "substantial and injurious effect" on his verdict. Instead, Roane must show more than a reasonable possibility that the jury *only* found him guilty on Counts 6, 9, 12, and 15 in reliance on the invalid predicate. But here, Roane has failed to make that showing.

Indeed, on the facts of this case, Roane could not possibly satisfy *Said*. The jury found Roane guilty of, among other things, the murders of Douglas Moody, Peyton Johnson, Louis Johnson, and Torrick Brown, Jr. On direct appeal, this Court explained that the murders that formed the basis of the § 924(c) convictions were "all in relation to [the defendants'] drug-trafficking operation," and occurred "because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" All of Roane's § 924(c) convictions have drug-trafficking and murder predicates that controlling precedent establish are valid; the jury separately convicted Roane of each of those predicate offenses, removing any doubt that the jury unanimously found each predicate proven; and each of those predicates was furthered through a firearm, given that the murders were all drug-related and accomplished with a gun.

Applying *Said*, the district court concluded that "[c]ommon sense dictates that the jury had at least one of these valid predicates in mind when it convicted [Roane]

on the § 924(c) Counts." Because Roane has offered nothing on appeal to rebut that commonsense conclusion, this Court should affirm.

## Argument

### I. Roane's challenge to his § 924(c) convictions is procedurally defaulted.

Although the harmlessness standard discussed in *Said* itself suffices to require upholding Roane's § 924(c) convictions if *any* of the predicate offenses are valid, Roane faces the further barrier to relief in that his challenge to his convictions is procedurally defaulted. "Principles of procedural default sharply limit a prisoner's ability to raise on collateral review claims not raised in his initial criminal proceeding or on direct appeal." *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 571 (4th Cir. 2021). By not challenging his firearm convictions before they became final, Roane procedurally defaulted such a challenge. *See Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012). That default "may be excused in two circumstances: where an inmate attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523 U.S. at 621).

Roane cannot satisfy either standard. First, Roane is not actually innocent of Counts 6, 9, 12, or 15 because these counts all rely on still-valid drug trafficking or crime of violence predicates. *See United States v. Green*, 67 F.4th 657, 671 (4th Cir.

2023*)* (rejecting actual innocence claim where underlying predicate remained valid). Second, even assuming Roane could establish "cause," *see United States v. McKinney*, 60 F.4th 188, 193–195 (4th Cir. 2023), he cannot establish prejudice under *Said*. Roane's firearm convictions continue to rely on valid predicate offenses, even after *Davis* and *Borden*. *See Green*, 67 F.4th at 668 ("Where a petitioner collaterally attacks a § 924(c) conviction solely on the ground that a predicate offense is invalid after *Davis*, the petitioner cannot show prejudice if the predicate qualifies as a crime of violence under the elements clause."). And even if some predicates no longer qualify, Roane has failed to establish that the jury convicted him *solely* in reliance on those invalid predicates.

## A. Narcotics distribution conspiracy under § 846 is a drug trafficking crime.

The jury convicted Roane in Count 1 of conspiring to distribute narcotics, in violation of § 846. All four challenged § 924(c) convictions have this § 846 conspiracy as a predicate.

To be convicted of a § 924(c) offense, the government must prove that the defendant used a firearm in furtherance of either a crime of violence or a "drug trafficking crime." Section 924(c)(2) defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" § 924(c)(2). Section § 846 falls within the definition of "drug trafficking crime," a definition that *Davis* did not affect. *See United States v. Simms*, 914 F.3d

229, 252 (4th Cir. 2019) (en banc) (striking down § 924(c)(3)(B) as vague but "leav[ing] intact … the entirety of the definition of 'drug trafficking crime' in § 924(c)."); *see also United States v. Eldridge*, 2 F.4th 27, 36 n.9 (2d Cir. 2021) ("*Davis* interpreted only the definition of a crime of violence, and thus had no effect on the scope of drug offenses that may also serve as predicates for § 924(c) convictions, see 18 U.S.C. § 924(c)(2)."); *United States v. Cannon*, 987 F.3d 924, 946 (11th Cir. 2021) (same). This Court can uphold a § 924(c) conviction solely in reliance on a "drug trafficking crime." *Hare*, 820 F.3d at 106. Thus, the Court can resolve this entire appeal on that basis alone.

The district court noted that, although the indictment charged the § 846 offense as a predicate drug-trafficking offense, the jury instructions did not enumerate the § 846 offense as a predicate. But the § 846 offense was a lesser-included offense of the CCE offense, *Tipton*, 90 F.3d at 891 (citing *Rutledge v. United States*, 517 U.S. 292 (1996)), and Roane's § 848(e) offenses relied on proof of a CCE, *Tipton*, 90 F.3d at 887. Thus, the jury necessarily found the § 846 offense was a predicate. Given that Roane procedurally defaulted his § 924(c) challenges, he cannot show actual innocence.

## B. CCE murder under § 848(e)(1)(A) is a drug trafficking crime.

The jury convicted Roane of the following three counts of CCE murder, in violation of § 848(e)(1)(A): Count 5 (murder of Douglas Moody); Count 8 (murder

of Payton Maurice Johnson); and Count 11 (murder of Louis J. Johnson, Jr.). Three of Roane's four § 924(c) convictions (Counts 6, 9, and 12) rely, in part, on one of these CCE murder counts.

As noted, to be convicted of a § 924(c) offense, the government must prove that the defendant used a firearm in furtherance of either a crime of violence or a "drug trafficking crime." Section § 848(e)(1)(A) undeniably falls within the definition of "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" § 924(c)(2). *Davis* did not alter that definition, *see Simms*, 914 F.3d at 252; *Eldridge*, 2 F.4th at 36 n.9; *Cannon*, 987 F.3d at 946, and this Court can uphold a § 924(c) conviction solely in reliance on a "drug trafficking crime," even if another predicate is no longer a crime of violence. *See Hare*, 820 F.3d at 106. Thus, the Court can resolve Roane's challenge to Counts 6, 9, and 12 on that basis alone. CCE murder is a valid "drug trafficking crime" under § 924(c)(2) and thus, *Davis* and *Borden* have no bearing on these counts.

On appeal, Roane argues that the district court "ignore[d] this Court's precedent" in concluding that § 848(e)(1)(A) was a drug trafficking crime because "This Court has routinely found that § 848(e) is a 'crime of violence,' not a drug trafficking crime." (Def. Br. 20 (citing cases).) But this argument both misses the point and concedes another. First, a statute may be both a "crime of violence" *and* a "drug trafficking crime." Nothing in the text of § 924(c) or this Court's precedent

indicates that the standards are mutually exclusive. That this Court has previously characterized § 848(e)(1)(A) as a crime of violence does not mean that the statute no longer falls within the meaning of "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" § 924(c)(2). Second, if, as Roane asserts, "[t]his Court has routinely found that § 848(e) is a 'crime of violence'" (Def. Br. 20), then he has conceded the validity of Counts 6, 9, and 12 on alternate grounds.

Roane further asserts that the district court erred in concluding that § 848(e) is a drug trafficking crime because it failed "to prove that the § 848(e) crimes were *themselves* inherently drug-trafficking crimes sufficient to serve as a predicate offense" and this "Court cannot assume that the jury convicted Mr. Roane of the § 924(c) charges based on predicate drug trafficking offenses." (Def. Br. 21.) Although Roane's argument is unclear, it appears he confuses the governing inquiry. The question whether a particular offense is a "drug trafficking crime" or "crime of violence" is a legal one. *See United States v. Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991) ("Whether an offense is a 'crime of violence' is a question of law for the court, and not a question of fact for the jury."). And the inquiry into whether § 848(e)(1)(A) is a drug trafficking crime is answered solely by looking at whether it falls within the definition of "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Because § 848(e) *does* fall within that definition—a point Roane cannot legitimately dispute—it is a drug trafficking crime, as a matter of law.

Thus, contrary to Roane's assertion, the district court did not need to look at whether "the § 848(e) crimes were *themselves* inherently drug-trafficking crimes."[2]

Finally, Roane argues that "the *Shepard* documents fall far short of establishing with 'certainty' how § 848(e) was considered by the jury." (Def. Br. 21.) But again, Roane confuses the law. The classification of an offense under § 924(c)(2) and § 924(c)(3)(A) is a legal determination that a court makes by comparing the statute defining the predicate with the definitions in § 924(c)(2) and § 924(c)(3)(A). And the question of what predicates the jury found is a question of fact. *Shepard* documents are relevant only if the Court is applying the modified categorical approach to "determine whether a prior offense is a crime of violence." *United States v. Carthorne*, 726 F.3d 503, 511 (4th Cir. 2013). The approach is employed "when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id*. But the modified categorical approach—and its attendant *Shepard* documents—has no role in determining "how § 848(e) was considered by the jury." (Def. Br. 21.) *See Ali*, 991 F.3d at 574; *Said*, 26 F.4th at 661 n.13.

Nor does it matter, as Roane suggests, that the jury instructions identified all

---

[2] Roane's suggestion that the district court should have considered whether the crime was "inherently" a drug trafficking crime would seem to invite courts to engage in the same sort of exercise the Supreme Court found so troubling in *Davis* that it deemed § 924(c)(3)(B) unconstitutionally vague.

the crimes of violence and drug trafficking predicates together, without distinguishing which crimes fell into each category. *Cf.* Def. Br. 21. The trial judge instructed the jury that, as to Counts 6, 9, 12, and 15, "[t]he offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen ... [and] Thirty-two are crimes of violence or drug trafficking crimes." JA237. That instruction was—and is—true as a matter of law, *see Adkins*, 937 F.2d at 950 n.2, and the jury was not required to join its finding of guilt to any particular definition under § 924(c)(2) or § 924(c)(3)(A). Roane provides no authority for this novel suggestion.[3]

## C.     CCE murder under § 848(e)(1)(A) is a crime of violence.

In addition to being a valid drug trafficking crime, § 848(e)(1)(A) is also a crime of violence. Under § 848(e)(1)(A), the government must prove that the defendant intentionally killed a person. Although § 848(e)(1)(A) has three distinct ways in which a connection is drawn between the killing and the drug trafficking, *see United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013), the government must still prove an intentional killing for every violation of § 848(e)(1)(A). Such proof satisfies § 924(c)(3)(A).

---

[3] On Roane's theory, the habeas court would have been barred from considering *any* of the predicates underlying Counts 6, 9, 12, or 15 because the trial judge never specifically instructed the jury that some were "crimes of violence," some were "drug trafficking crimes," and some were both. But not even Roane goes this far.

This Court has repeatedly held that an offense that requires proof of a murder satisfies § 924(c)(3)(A). *See, e.g.*, *Manley*, 52 F.4th at 149–151 (second-degree VICAR murder); *Jackson*, 32 F.4th 278 (premeditated first-degree murder under § 1111); *United States v. Roof*, 10 F.4th 314, 400–02 (4th Cir. 2021) (death-resulting offense under 18 U.S.C. § 249(a)(1)); *United States v. Mathis*, 932 F.3d 242, 264–65 (4th Cir. 2019) (first-degree VICAR murder); *In re Irby*, 858 F.3d 231, 236–38 (4th Cir. 2017) (second-degree retaliatory murder); *cf. United States v. Allred*, 942 F.3d 641, 654 (4th Cir. 2019) (knowingly engaging in conduct that causes bodily injury in violation of witness retaliation statute satisfies ACCA's elements clause); *United States v. Battle*, 927 F.3d 160, 167 (4th Cir. 2019) (Maryland conviction for assault with intent to murder satisfies ACCA's elements clause "because the offense contemplates an intentional causation of bodily injury").

Insofar as Roane argues that § 848(e)(1)(A) can be violated by a bare omission, this Court has rejected such an argument. *See United States v. Rumley*, 952 F.3d 538, 551 (4th Cir. 2020). This Court and the Supreme Court have recognized that crimes of violence and violent felonies encompass crimes "characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon." *United States v. Bryant*, 949 F.3d 168, 181 (4th Cir. 2020) (quoting *In re Irby*, 858 F.3d at 236; *Johnson v. United States*, 559 U.S. 133, 140–41 (2010)). Indeed, given that "the force necessary to overcome a

victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*," *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019), it follows that the force need to kill a person suffices.

Roane argues that because § 848(e)(1)(A) "can be committed with a *mens rea* of less than purposeful or knowing conduct," it fails to satisfy *Borden*. (Def. Br. 22–23.) But, as the district court held, "the statute explicitly requires an intentional killing created by the defendant's intentional behavior, satisfying the heightened *mens rea* requirement." JA267. Indeed, "[t]he statute provides that anyone engaging in a CCE 'who *intentionally* kills or counsels, commands, induces, procures or causes the *intentional* killing of an individual and such killing results' is subject to conviction of CCE murder." *Id.* (quoting § 848(e)(1)(A)).

Still, Roane asserts that § 848(e)(1)(A) fails to satisfy *Borden* because the requisite *mens rea* "is no more than 'a grave risk of death[.]'" (Def. Br. 22.) But this argument also fails. As an initial matter, the jury was not instructed that it could convict Roane under a "grave risk of death" theory, *see* JA268 (citing jury instructions), and as discussed below, if such a theory exists, it would be divisible. The trial judge instructed the jury using language that precisely tracks the statute: "while the defendant was so engaged, the defendant intentionally killed, or counseled, commanded, induced, procured, or caused the intentional killing of the individual victim named in a particular count; and three that the killing of that victim

actually resulted." *Id*. There is no suggestion in this instruction that Roane could have been convicted through conduct that was anything but intentional.

Roane's "grave risk of death" theory appears to rely on the capital gateway factors, but that argument fails. *Cf.* Def. Br. 23 (citing *United States v. Alvarez*, 266 F.3d 587, 594–95 (6th Cir. 2001)). The relevant capital intent factor at the time of Roane's prosecution provided that the defendant must have "intentionally engaged in conduct which—(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and (ii) resulted in the death of the victim." 21 U.S.C. § 848(n)(1)(D).[4] Thus, § 848(n)(1)(D) requires the defendant to have engaged in *intentional* conduct that he *knew* would have created a grave risk of death and that death resulted from such intentional conduct. If anything, § 848(n)(1)(D) falls somewhere between the first and second most culpable mental states under *Borden*. *See Borden*, 141 S. Ct. at 1823 ("Purpose and knowledge are the most culpable levels in the criminal law's mental-state 'hierarchy.'"). Indeed, the jury's capital findings so reflect. *See Tipton*, 90 F.3d at 894 ("[T]he jury unanimously found as statutory aggravating factors all four of the (n)(1) factors, plus the (n)(8) factor that each of the murders was 'the result of substantial planning and premeditation.'").

---

[4] Roane's death sentence is controlled by the now-repealed procedures in 21 U.S.C. § 848, rather than the later Federal Death Penalty Act (FDPA). *See United States v. Stitt*, 552 F.3d 345, 354 (4th Cir. 2008).

At best for Roane, § 848(n)(1)(D)'s language is synonymous with extreme recklessness. And under this Court's precedent, crimes that can be accomplished through extreme recklessness satisfy *Borden* and § 924(c)(3)(A). *See Manley*, 52 F.4th at 148–149. If *Manley* found willful and purposeful conduct that was "likely to cause death or great bodily harm" to amount to "extreme recklessness," *id*. at 149–150, then *intentional* conduct that a defendant *knew* would create a *grave* risk of death—coupled with the resulting death—must, at the very least, fall within the same species of recklessness. *Id*. Thus, even if Roane were correct that the gateway factors can broaden the intent required under § 848(e)(1)(A)—a suggestion that runs contrary to the plain language of the statute, the jury instructions (JA1523), and this case's bifurcated capital trial procedures—the gateway factors would then be elements that must be unanimously found by the jury, making them divisible, and here, the jury found that the murders were "intentional" and "the result of substantial planning and premeditation." *Tipton*, 90 F.3d at 894.

Roane also argues that § 848(e)(1)(A) does not require intentional conduct because it may be accomplished when a person "counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results." (Def. Br. 24–25.) The district court concluded that this provision of the statute was akin to aiding and abetting liability, and that, under this Court's precedent, aiding and abetting a crime of violence satisfies § 924(c)(3)(A). *See* JA270 (citing *Ali*, 991

F.3d at 574). On appeal, Roane does not meaningfully challenge that conclusion. Instead, Roane auditions a new theory never articulated below. According to Roane, because "Section 848(e) separates the phrases 'intentionally kills' from 'counsels, commands, induces, procures, or causes' with the word 'or,'" the statute does not assign a heightened 'intent' *mens rea* to the latter string of words[.]" (Def. Br. 24.)

But Roane provides precisely zero authority for this reading of the statute—one that conflicts with the general principle that "mens rea elements [of the statute in question] cannot be limited to their individual clauses." *Roof*, 10 F.4th at 404; *see e.g.*, *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019). Moreover, Roane's theory ignores a critical phrase in the statute's second clause: "intentional killing." Even assuming the statute's first use of the word "intentionally" does not apply to the "counsels, commands, induces, procures, or causes" clause, the statute still requires those actions to produce an "*intentional* killing of an individual." And Roane fails to explain how a person "engaging in or working in furtherance of a continuing criminal enterprise"—meaning, a person committing knowing and intentional violations of underlying drug laws and doing so as an organizer or supervisor of five or more people—could recklessly counsel, command, induce, procure, or cause an *intentional* killing of a human being. Indeed, § 848(e)(1)(A)'s list of verbs indicates that the statute requires a heightened mental state. As the district court explained, where "a defendant commits CCE Murder by counseling,

commanding, inducing, procuring, or causing the victim to be killed, the active, intentional nature of each of these verbs reflects the same degree of direct, knowing involvement and thus the same heightened culpability." JA268 (quoting *United States v. Smith*, 605 F. Supp. 3d 1, 21–22 (D.D.C. 2022) (citing dictionary definitions for each verb)).

Moreover, Roane's theory that a heightened *mens rea* does not apply to the "counsels, commands, induces, procures, or causes" provision of the statute ignores the extant authority on the statute. As the district court explained, "courts interpreting the CCE Murder statute have consistently found a heightened *mens rea* to apply, [that the defendant intend the killing to occur,] regardless of the form of defendant's contribution to the intentional killing." *Id*. (citing cases). Roane provides no authority to the contrary and his construction of the statute—if adopted—would subject defendants to death-eligible criminal liability for such things as the reckless inducement of an intentional murder. But not only does Roane offer no support for the existence of this type of hypothetical liability under § 848(e)(1)(A), but the notion itself would conflict sharply with the principle that, to be liable, an aider and abettor must have the specific intent to aid in the commission of the underlying crime. *See Rosemond v. United States*, 572 U.S. 65, 76 (2014). And "this 'specific intent' requirement, combined with the causation of bodily injury, necessarily entail[s] the use of physical force." *Id*. at 148; *see also United States v. Runyon*, 994

F.3d 192, 204 (4th Cir. 2021) ("If a defendant willingly agrees to enter into a conspiracy with the specific intent that a murder be committed for money and death results from that agreement, it follows that the defendant acted with specific intent to bring about the death of the conspiracy's victim."). At best, Roane may be describing a form of depraved-heart murder. But even assuming such a theory was available under § 848(e)(1)(A), it would still be covered by § 924(c)(3)(A). *See Manley*, 52 F.4th at 148–149; *see also United States v. Begay*, 33 F.4th 1081, 1089–96 (9th Cir.) (en banc), *cert. denied*, 143 S. Ct. 340 (2022); *United States v. Baez-Martinez*, 950 F.3d 119, 124–25 (1st Cir. 2020); *Thompson v. United States*, 924 F.3d 1153, 1157 (11th Cir. 2019).

Additionally, even if a heightened *mens rea* did not apply to the string of verbs Roane challenges, it would make no difference. Section 848(e)(1)(A) requires proof of a murder. One way or the other, somebody must be intentionally killed for liability to attach. So, it is largely irrelevant whether a defendant himself intentionally fires a gun at a victim, or instead induces someone else to deliberately do so. At bottom, the statute requires a completed use of intentional force culminating in a murder. Thus, § 848(e)(1)(A) is "an offense that is a felony" that "has as an element the use, attempted use, or threatened use of physical force against the person[.]" § 924(c)(3)(A). The *offense* itself must involve force. But "[i]t doesn't require the defendant's use, attempted use, or threatened use of force." *United States v.*

*Harrison*, 54 F.4th 884, 890 (6th Cir. 2022). For this reason, Roane's claim (Def. Br. 26) that "[b]ecause the jury was not required to find [he] actually used intentional force, his conviction does not satisfy the § 924(c)(3)(A)'s force clause" misses the point. As noted, § 924(c)(3)(A) requires the underlying offense to have as "an element the use, attempted use, or threatened use of physical force." It does not require the defendant himself use that force. *Id.*; *see also United States v. Stevens*, —F.4th —, No. 21-2044, 2023 WL 3940121, at *7 (3d Cir. June 12, 2023) ("§ 924(c) lacks any personal 'use of force' requirement"). If it did, then this Court's *Ali* decision—which held that an aider and abettor of a Hobbs Act robbery who himself committed no violence—would be wrong. Section 848(e)(1)(A) requires a completed murder that can only occur through an intentional use of force. It is therefore irrelevant whether Roane or a codefendant supplied the requisite force. *See Harrison*, 54 F.4th at 890 ("When the underlying crime requires use of physical force, and the complicity statute requires the underlying crime occur, 'then the complicity conviction necessarily includes the physical force element.' It's enough that complicity to commit murder requires use of force by someone; that someone didn't have to be Harrison.").

Finally, even if § 848(e)(1)(A)'s second clause countenanced Roane's theory it would make no difference in this case. Following a penalty hearing on the capital murder counts, the jury recommended that Roane be sentenced to death for one of

the three murders under § 848(e). But for all three capital murders, the jury unanimously found all the gateway intent factors, including that Roane intentionally killed the victim of the capital crime. *See Tipton*, 90 F.3d at 894 ("[T]he jury unanimously found as statutory aggravating factors all four of the (n)(1) factors, plus the (n)(8) factor that each of the murders was 'the result of substantial planning and premeditation.'"). These "intent and aggravating factors which the government … rel[ies] upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt." *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003); *see also Ring v. Arizona*, 536 U.S. 584, 609 (2002) ("[A]ggravating circumstance[s] necessary for imposition of the death penalty" are elements of the capital offense that must be found by a jury); *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) ("If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] they must be elements."); *Burrage v. United States*, 571 U.S. 204, 210 (2014) (any fact that "increase[s] the minimum and maximum sentences to which [a defendant is] exposed … is an element that must be submitted to the jury and found beyond a reasonable doubt"). Thus, because any one of the § 848(n)(1) factors satisfies § 924(c)(3)(A), it follows that "[a]ny offense that incorporates the elements of

[§ 848(n)(1)] is a crime of violence[.]" *In re Hall*, 979 F.3d 339, 345–46 (5th Cir. 2020) (so holding under the identical FDPA).

### D. VICAR murder is a crime of violence.

The jury convicted Roane of the following four counts of VICAR murder, in violation of § 1959(a)(1): Count 7 (murder of Douglas Moody); Count 10 (murder of Peyton Johnson); Count 13 (murder of Louis Johnson, Jr.); and Count 14 (murder of Torrick Brown, Jr.). Each of Roane's § 924(c) convictions rely on one of these VICAR murder counts.

Section 1959 requires that a defendant's conduct "constitute[s] one of the enumerated federal offenses as well as the charged state crime," *United States v. Keene*, 955 F.3d 391, 393 (4th Cir. 2020), and therefore, the elements of the generic federal offense or the state offense (or both working in combination) forming the entire VICAR offense may be used to show that a VICAR offense falls within § 924(c)(3)(A).

Here, the indictment did not explicitly cross-reference an underlying state or federal murder statute. Instead, each count in the indictment stated that Roane and his codefendants "did knowingly, intentionally, and unlawfully cause the murder of" each named victim. JA70; JA72–74. Contrary to Roane's claims (Def. Br. 14–16), that fact is irrelevant for purposes of this appeal because, as the district court concluded, every possible contender for a murder predicate satisfies § 924(c)(3)(A).

And a successive § 2255 raising a *Davis* challenge is not the avenue to seek relief for a freestanding claim of error in jury instructions.

This Court has held that VICAR murder premised on a violation of Virginia's first and second-degree murder statutes qualifies as a crime of violence. *See Manley*, 52 F.4th at 149 (second-degree VICAR murder); *Mathis*, 932 F.3d at 265 (first-degree VICAR murder). This Court has also held that federal murder qualifies under § 924(c)(3)(A). *See Jackson*, 32 F.4th 278 (first-degree federal murder); *In re Irby*, 858 F.3d at 238 (federal second-degree murder). The murders in Roane's case all involved first-degree murder because they were premeditated. Additionally, even assuming Roane's convictions were premised on common law murder, that too would satisfy § 924(c)(3)(A). JA244. A premeditated murder under the common law easily satisfies § 924(c)(3)(A). *See Jackson*, 32 F.4th at 286–87. On appeal, Roane makes no argument to the contrary. Instead, he vaguely suggests that this case may have involved felony murder. (Def. Br. 18–19.) But it is impossible to square that suggestion with the fact that the jury found the murders at issue were "intentional" and "the result of substantial planning and premeditation." *Tipton*, 90 F.3d at 894. Nor can Roane reconcile his suggestion with the language of the indictment, which specified that Roane and his codefendants "did knowingly, intentionally, and unlawfully cause the murder of" each named victim. JA70; JA72–74. Much like *Jackson*, this is not a case involving felony murder.

Roane asserts that despite the indictment's use of "knowing and intentional" language, the VICAR murder counts fail to satisfy *Borden* because the jury instructions did not connect the "knowing and intentional" *mens rea* to any particular use of force such that "the elements as charged could still be satisfied without the knowing or intentional use of violent force." (Def. Br. 18.) But this argument ignores the indictment and confuses the issues. First, as already explained, the indictment clearly states that Roane and his codefendants "did knowingly, intentionally, and unlawfully cause the murder of" each named victim. JA70; JA72–74. That fact resolves any question over what type of murders were charged in this case. Second, Roane's quibble with the overall VICAR jury instruction has no bearing on the legal status of the underlying murder predicate. *Cf. Adkins*, 937 F.2d at 950 n.2. Whether murder is a crime of violence rises or falls on the unique characteristics of the underlying murder charge. Here, it is clear that notwithstanding the type of murder supporting the VICAR counts—state, federal, or common law—Roane was charged with and convicted of knowing and intentional murders. *See Tipton*, 90 F.3d at 894. This fact dooms his *Borden* argument. *See Jackson*, 32 F.4th at 286–87.

Additionally, the challenged instruction required the jury to find that Roane "knowingly and intentionally" committed the murder charged in each VICAR count. JA1525. This instruction further undermines Roane's argument that felony murder or a recklessly committed killing was at stake.

Roane's *Borden* argument is even less persuasive when considered in the context of the VICAR statute, which itself carries a heightened *mens rea* element. Under § 1959(a), the defendant must commit the specified crime for the purpose of increasing or maintaining his position (or the position of another) in the criminal enterprise. *See Keene*, 955 F.3d at 394; *United States v. Zelaya*, 908 F.3d 920, 926–27 (4th Cir. 2018). This heightened *mens rea* requirement applies to all the offenses enumerated in § 1959(a). *See Roof*, 10 F.4th at 404 ("[The] mens rea elements [of the statute in question] cannot be limited to their individual clauses."). Thus, for every VICAR crime, the government must establish either that the defendant acted intentionally (because he committed the VICAR offense for money) or that the defendant acted with the purpose of maintaining or increasing his position in the criminal enterprise. The government satisfies the second showing if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Zelaya*, 908 F.3d at 927 (quoting *United States v. Fiel*, 35 F.3d 997, 1004 (4th Cir. 1994)). Thus, the defendant must have the purpose to increase or maintain his position in the enterprise, which precludes the existence of a reckless *mens rea* before committing the crime. *See Manley*, 52 F.4th at 152 (Niemeyer, J., concurring).

Roane also makes much of the fact that the indictment did not explicitly incorporate any underlying statute. (Def. Br. 15.) But he provides no authority requiring the government to do so. To sustain a VICAR conviction under § 1959, the government must prove that: (1) there was a racketeering enterprise; (2) it was engaged in racketeering activity (3) the defendant had a position in the enterprise; (4) the defendant committed the alleged crime of violence; and (5) his general purpose in so doing was to maintain or increase his position in the enterprise. *Zelaya*, 908 F.3d at 926–27. Regarding the fourth element, the jury only needed to conclude that Roane committed the alleged crime of violence. Here, there was only one crime of violence alleged, and that crime was an intentional murder. The question whether that crime satisfies § 924(c)(3)(A) is a legal one, *see Adkins*, 937 F.2d at 950 n.2, and the jury would have had no role in that determination even if the indictment contained an explicit cross-reference to one or more statutes.

Lastly, Roane suggests that because the VICAR murder instruction included a conspiracy-based theory of liability he was somehow convicted of conspiracy to commit VICAR murder, which would not be a crime of violence. (Def. Br. 11.) The challenged jury instruction provided that a defendant would be guilty under § 1959 if he "knowingly and intentionally commit[ted] or conspire[d] to commit the crime charged in the particular count under consideration." JA1525. Roane argues that "[t]he jury was not required to make any finding specifying on what ground it

convicted" him and that, therefore, the court must assume it was the conspiracy charge. (Def. Br. 11–12.)

Roane's attempt at seeking refuge in this jury instruction fails. First, the indictment makes clear that Roane and his codefendants were charged with "knowingly, intentionally, and unlawfully caus[ing] the murder of" each named victim. JA70; JA72–74. This was not a conspiracy case. Second, that the instruction added a conspiracy provision is of no moment. As *Ali* held, it is irrelevant that "we do not know for certain which theory of guilt [aiding and abetting or conspiracy] the jury accepted" because "ambiguity" and "uncertainty" are insufficient under plain error review. *Ali*, 991 F.3d at 575. Instead, to succeed on such an argument, Roane must show that his conviction rested solely on the conspiracy theory of liability. *Id*. And "[a]n even more stringent standard applies in a § 2255 case like the one at bar." *Said*, 26 F.4th at 660. Roane has made no attempt at demonstrating that his four VICAR murder convictions were premised on a conspiracy theory of liability. Instead, he relies on supposed ambiguity and uncertainty—the exact thing *Ali* and *Said* have instructed defendants not to do. And much like *Ali*, the evidence in this case, *see infra* Section I.E, demonstrates that Roane "did more than simply conspire to commit" murders but that he actually committed them or aided and abetted their commission. *Ali*, 991 F.3d at 576. And again, the type of error Roane asserts here neither satisfies 28 U.S.C. § 2255(h)(2) nor overcomes procedural default.

### E. VICAR maiming is a crime of violence.

The jury convicted Roane in Count 16 of VICAR maiming, in violation of §1959(a)(2). Count 16 is one of the predicate offenses underlying the Count 15 § 924(c) conviction. Because each § 924(c) conviction is supported by a VICAR murder predicate, the Court need not reach the question whether VICAR maiming satisfies § 924(c)(3)(A). However, for the sake of completeness, the government will address this issue as well.

This Court has already concluded that a VICAR offense based on Virginia malicious wounding satisfies § 924(c)(3)(A). *See Manley*, 52 F.4th at 148–149; *Rumley*, 952 F.3d at 551. And under any federal generic definition of maiming, the same precedent that establishes that Virginia malicious wounding qualifies would also suffice, as further illustrated by this Court's other cases. *See Allred*, 942 F.3d at 654 (knowingly engaging in conduct that causes bodily injury in violation of witness retaliation statute satisfies ACCA's elements clause); *Battle*, 927 F.3d at 167 (Maryland conviction for assault with intent to murder satisfies ACCA's elements clause "because the offense contemplates an intentional causation of bodily injury").

On appeal, Roane provides no argument on the merits of whether state or generic maiming qualifies as a crime of violence. Instead, he relies entirely on the fact that Count 16 did not explicitly cross-reference a federal or state offense. (Def. Br. 19–20.) But as already explained, that omission has no bearing on the question

whether the offense is itself a crime of violence. If federal and state maiming offenses satisfy § 924(c)(3)(A)—a point Roane does not dispute—then Count 16 relies on a valid crime of violence.

At bottom, Roane's dispute with the language of the indictment has little to do with the legal question whether an offense satisfies § 924(c)(3)(A). Instead, his objection resembles a challenge to the sufficiency of the indictment, the sufficiency of the evidence, or the sufficiency of the jury instructions that could have been raised at any point over the last 30 years and has no place in this sort of collateral attack. The jury convicted Roane of the VICAR counts and this Court affirmed. Assuming there was an error in not explicitly including a state or federal cross-reference, Roane makes no argument that such an error prejudiced him. Omissions from an indictment or jury instruction are subject harmlessness review, *see Greer v. United States*, 141 S. Ct. 2090 (2021); *United States v. Cotton*, 535 U.S. 625 (2002); *United States v. Banks*, 29 F.4th 168 (4th Cir. 2022), and as to both the VICAR murder and maiming counts Roane makes no attempt at demonstrating that the alleged defect had a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Smith*, 723 F.3d 510, 512 (4th Cir. 2013) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Nor could any such claim of error satisfy § 2255(h)(2).

### F.    Roane cannot demonstrate prejudice.

Even assuming the invalidity of one or more predicate offenses, Roane still cannot demonstrate any prejudice. *See Green*, 67 F.4th at 668; *Said*, 26 F.4th at 660–66. In addressing prejudice, Roane has consistently sought to shirk his burden of proof and binding precedent. *E.g.*, *Hedgpeth v. Pulido*, 555 U.S. 57 (2008).

For example, in his reply to the government's response at the authorization stage, Roane urged this Court to both apply the modified categorical approach to determine on which predicate the jury relied and eschew cases applying harmless-error review in the context of alternate theories of liability, such as *United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010), *United States v. Hastings*, 134 F.3d 235 (4th Cir. 1998), and *United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012). *See* Reply Motion, *In re James Roane*, No. 20-7, ECF No. 11-1 at 4–11 (4th Cir. June 6, 2020). In Roane's view, these cases were inapposite because if there was even one invalid predicate, the Court could not conduct harmlessness review to determine the effect of the error.

Then, this Court decided *Ali*, which explicitly rejected Roane's attempt to enlist the modified categorial approach—instead of ordinary principles of harmless-error review—to assess the validity of a § 924(c) conviction predicated on both valid and potentially invalid predicates. *Ali*, 991 F.3d at 574–76 (citing, in part, *Pulido*, *Robinson*, and *Hastings*). The proper inquiry, *Ali* confirmed, was "case-specific and

*fact-intensive*[.]" *Id.* at 575 (emphasis added). After *Ali*, the Court directed the parties to file memorandum briefs. In response to *Ali*'s clear rejection of his entire legal theory, Roane fell back on stressing that, at the application stage, he was only required to make a prima facie case and that this Court should "Leav[e] Any More Fact-Intensive Inquiry to the District Court After Authorization[.]" Memorandum Brief, *In re James Roane*, No. 20-7, ECF No. 36 at 2 (4th Cir. Sept. 2, 2021). Alternatively, Roane argued that *Ali* was distinguishable because the evidence in that case "so thoroughly supported the conclusion that the jury's § 924(c) verdict rested on a valid predicate," whereas here, the opposite was true. *Id.* at 5–7. In making this argument, Roane ignored the fact that § 848(e)(1)(A) is an obvious drug trafficking crime and further asserted that *Ali* is distinguishable because this case implicated a unanimity problem. Relying on *United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005), Roane argued that because the jury might have split over which predict supported each § 924(c) conviction, "the court … effectively gave the jury license to reach a nonunanimous verdict, a Sixth Amendment compounding error that was not present in *Ali*." *Id.* at 8.

In his Reply Memorandum, Roane continued to stress that "Harmless error review entails a fact-intensive analysis that should only be undertaken by the district court" and touted the district court decision in *Said v. United States*, 2021 WL 3037412 (E.D. Va. July 19, 2021), as being similar to his case because, after

42

receiving briefing on *Ali*, the *Said* court vacated § 924 counts based on its "grave doubt" over which predicate the jury relied. *See* Memorandum Reply Brief, *In re James Roane*, No. 20-7 (4th Cir. Sept. 16, 2021), ECF No. 43 at 1–3. Notably, the court in *Said* reached its decision by ignoring *Ali* and applying the modified categorical approach in precisely the manner urged by Roane. So as Roane purported to accept *Ali*'s rejection of this theory by encouraging the Court to grant his motion and let the district court do the fact-finding, he was simultaneously promoting a decision that said exactly the opposite.

After receiving authorization from this Court to file a successive petition, Roane continued pressing defunct theories. Although this Court in *Ali* had expressly rejected the applicability of the modified categorical approach to the question on which predicate the jury relied, *see Ali*, 991 F.3d at 574 (holding that "defendant fundamentally misunderstands what the categorical approach accomplishes and the nature of our inquiry under plain error review"), Roane nevertheless urged the district court to apply it to that very question. *See* JA17–JA18. And despite this Court's numerous cases upholding a § 924(c) conviction where one predict remains valid, *see Hare*, 820 F.3d at 105–06; *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021); *Ali*, 991 F.3d at 572–75, Roane continued arguing that "a § 924(c) conviction cannot be sustained if one of the possible predicates is not categorically a crime of violence." JA18; JA19 (same). In his motion, Roane also continued

touting the *Said* opinion and pressing his unanimity argument based on the Sixth Circuit's *Savoires* decision. JA21; JA23.

The day after Roane filed his district court motion, this Court decided *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), and in doing so reversed the district court's vacatur of two § 924 convictions where, after *Davis*, some predicates were valid and some invalid. As did *Ali*, *Said* undercut fundamental aspects of Roane's theory. First, *Said* rejected the identical unanimity argument—based on the same Sixth Circuit case—Roane pressed in this Court and the district court. *Said*, 26 F.4th at 664–65. Next, *Said* rejected—as had *Ali*—Roane's theory that the modified categorical approach had any role in determining on which predict the jury relied. *Id*. at 661 n.13. Finally, *Said* confirmed that, on collateral review, defendants need to show more than just ambiguity and uncertainty as to which predict the jury relied on. Instead, defendants "must show more than a reasonable possibility that the jury *only* found him guilty" in reliance on the invalid predicts. *Id*. at 662. In other words, *Said* rejected the very core of Roane's theory that absolute certainty as to which predict the jury relied on was required to uphold his § 924(c) convictions. *Cf.* JA17–JA19.

With every element of Roane's theory now rejected by this Court's precedent, the only thing left for Roane to do was to apply *Said*'s principles to his case. But in his reply in the district court, Roane devoted one paragraph to summarizing *Said* and

just one more to attempting to distinguish it, while simultaneously shifting the burden to the government. JA221–JA222 ("[T]he Government provides no citation to the record demonstrating the jury would have made such a finding."). Roane also continued citing the same out-of-circuit plain error review cases *Said* deemed both non-binding and inapposite. *Compare* JA223 (citing *United States v. Capers*, 20 F.4th 105 (2d Cir. 2021); *United States v. Jones*, 935 F.3d 266 (5th Cir. 2019)), *with Said*, 26 F.4th at 662 n.14 ("*Said* directs our attention to cases from other circuits that have found plain error in similar circumstances. *See, e.g.*, *United States v. Capers*, 20 F.4th 105, 123 (2d Cir. 2021); *Jones*, 935 F.3d at 274 (5th Cir. 2019). But, of course, we are bound by our own precedent. And, in any event, this is not a plain-error case; the standard we must apply here is even more difficult for Said to satisfy."). In other words, despite repeatedly stressing in his filings to this Court that *Ali*'s fact-intensive inquiry should occur in the district court—and despite *Said* confirming that Roane bore the burden—Roane barely attempted to satisfy *Said*. Instead, Roane continued resisting this Court's precedent and the operative burden of proof.

*     *     *

Things are no different on appeal. In fact, Roane even continues relying on these same out-of-circuit plain error cases rejected by *Said*. (Def. Br. 28 (citing *Capers* and *Jones*).) While Roane criticizes the district court for ruling "[w]ithout

engaging in any actual harmless error review" (Def. Br. 28), it was his own insufficient showing that doomed his case. After citing *Said*'s standard requiring Roane to "show more than a reasonable possibility that the jury only found him guilty" in reliance on invalid predicts, the district court ultimately concluded that Roane had "not offered a sufficient reason" to stray from *Said*[.]" JA246–JA247. The district court was correct.

On appeal, Roane insists that there is only one "remaining valid predict" offense, the Count 1 drug conspiracy. (Def. Br. 27–28.) Yet he fails to explain why the Court could not simply affirm his four § 924(c) convictions solely by relying on Count 1. In fact, Roane has waived any challenge to the district court's conclusion (JA240–JA241) that Count 1 can independently support his firearm convictions, or at the very least, his conviction on Count 15. Roane has failed to challenge the district court's holding that this Court's vacatur on appeal does not render Count 1 off limits and fails to even argue that the jury instructions preclude this Court's consideration of that count. Considering the district court's decision, these arguments were clearly "available to [Roane]." *United States v. Boyd*, 55 F.4th 272, 280 (4th Cir. 2022). But by not raising them, "he has waived appellate review of that separate ground for denying his motion, and [this Court can] affirm on that basis." *United States v. Ebert*, 61 F.4th 394, 402 (4th Cir. 2023); *see also* Fed. R. App. P. 28(a)(8)(A).

Although Roane does not challenge this Court's ability to consider Count 1 in assessing prejudice, he does argue that the jury itself was unlikely to have relied on that count. (Def. Br. 27–28.) This argument is the crux of Roane's attempt at satisfying *Said*. Roane asserts that because "there was little to no evidence that firearms were used in the commission" of the drug trafficking conspiracy it is "unlikely" the jury would have convicted in reliance on that predicate. (Def. Br. 27–28.)

But this argument blinks reality. Indeed, not even Roane can make the claim without tripping over its consequences. Count 1 specifically alleged that "it was [] part of the conspiracy to engage in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy. To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities." JA65. As overt acts in furtherance of Count 1, the indictment explicitly included the murders of Douglas Moody, Peyton Maurice Johnson, Louis Johnson, Jr., and Torrick Brown, Jr., and the shooting of Martha McCoy. JA66. And the jury separately found Roane guilty of those four murders and the attack on Martha McCoy through its verdict on other counts. At bottom, Roane's claim "there was little to no evidence that firearms were used in the commission" of Count 1 is baseless. Roane even concedes as much by asserting that "there was overwhelming evidence that [his] codefendants used firearms in

connection with the killings that served as the invalid predicates." (Def. Br. 28.) In making this argument, Roane fails to recognize that the murders he claims only supported the allegedly invalid predicts *also* supported Count 1.[5]

Even putting aside Count 1, Roane cannot demonstrate any prejudice from the inclusion of the predicts Roane argues are invalid. Roane, like the *Said* defendant, was convicted of every count underlying his convictions on Counts 6, 9, 12, and 15. And even assuming the invalidity of one or more crime-of-violence predicates, it is impossible that the jury did not find that Roane used a firearm in furtherance of the undisputedly valid CCE murders charged under § 848(e) (Counts 5, 8, and 11). As noted above, § 848(e) is a valid drug-trafficking predicate and is enough to support the § 924(c) convictions charged in 6, 9, and 12. So too regarding the VICAR murder predicates (Counts 7, 10, 13, and 14), which can just as equally support Roane's convictions on Counts 6, 9, 12, and 15.[6]

On direct appeal, this Court explained that the murders that formed the basis of the § 924(c) convictions were "all in relation to [the defendants'] drug-trafficking operation," and occurred "because their victims were suspected of treachery or other

---

[5] In making this argument, Roane inadvertently concedes that if this Court finds *either* the CCE murder or VICAR murder offenses to be valid predicates, then his prejudice argument fails.

[6] *Ali* and *Said* also establish that it is irrelevant for present purposes whether Roane was held liable as an aider and abettor for the murders. *See Said*, 26 F.4th at 659 n.9; *Ali*, 991 F.3d at 573–74.

misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Tipton*, 90 F.3d at 868. All of Roane's § 924(c) convictions had drug-trafficking and murder predicates that controlling precedent establish are valid; the jury separately convicted Roane of each of those predicate offenses, removing any doubt that the jury unanimously found each predicate proven; and each of those predicates was furthered through a firearm, given that the murders were all drug-related and accomplished with a gun.

Indeed, each murder for which Roane was found guilty was committed to advance the organization's drug trafficking. As this Court explained, "[t]he Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances." *Tipton*, 90 F.3d at 887.

Roane murdered Douglas Moody (Counts 5 and 7), a suspected rival in his drug-trafficking area, on January 13, 1992. *Id*. at 868. Tipton and Roane met Moody at his apartment where Tipton shot him twice in the back. Moody fled and Tipton and Roane pursued. Roane caught up with him and stabbed him eighteen times with a military style knife. *Id*. This Court recounted the motive for Moody's murder as follows:

The jury had before it information that well before Moody's murder, a motive for it, to which Roane was privy with Tipton and Cory Johnson, had developed. Specifically, trial evidence showed that Moody and his superior, Peyton Johnson, a rival drug dealer, were thought by Tipton, Cory Johnson, and Roane to be standing in the way of their taking over the Newtowne drug market whose development was Roane's special function. Evidence from the guilt phase revealed that Roane had in fact stated that Tipton and Johnson "and them didn't want Maurice [Peyton Johnson] and 'Little Doug' [Moody] to work in that area . . . selling cocaine.

*Id*. at 896.

Roane murdered Peyton Maurice Johnson (Counts 8 and 10), a rival drug dealer, on January 14, 1992. On that day, Roane and Cory Johnson retrieved a bag of guns they had earlier left at an apartment. Roane then located Peyton Johnson at a tavern. After Roane left the tavern, Cory Johnson entered and fatally shot Peyton Johnson with a semi-automatic weapon. *Id*.

Less than two weeks later, on January 29, 1992, Roane and Lance Thomas, another codefendant, murdered Louis Johnson (Counts 11 and 13), whom Cory Johnson thought had threatened him while acting as a bodyguard for a rival drug dealer. *Id*. at 869; *see also United States v. Reavis*, 48 F.3d 763, 766 (4th Cir. 1995) ("On January 29, 1992, Louis Johnson was murdered for allegedly harassing one of the drug ring's workers."). Roane drove Cory Johnson and Thomas to an alley, got out of the car, approached Louis Johnson, and shot him. *Id*. Cory Johnson and Thomas then exited the car and began firing as well. "Louis Johnson died from some or all of these gunshot wounds." *Id*.

On February 1, 1992, Roane murdered Torrick Brown (Count 14) and maimed Martha McCoy (Count 16). Roane, Cory Johnson, and Thomas traveled to Brown's apartment, knocked on the door, and asked his half-sister, McCoy, if Brown was available. *Id*. When Brown approached the door, Roane, Cory Johnson, and the third co-conspirator opened fire, killing Brown and critically murdering McCoy. *Id*.; *Reavis*, 48 F.3d at 766 ("Roane, Thomas, and Johnson shot Brown sixteen times and McCoy, who was in Brown's house at the time, six times."). This Court recounted the motive for this attack as follows:

> the evidence was sufficient to support jury findings that the deeds were done by Roane and other enterprise members, including Johnson, in part at least in furtherance of the enterprise's policy of treating affronts to any of its members as affronts to all, of reacting violently to them and of thereby furthering the reputation for violence essential to maintenance of the enterprise's place in the drug-trafficking business. The evidence also sufficed to support further findings that participation in this sort of group retaliatory action in behalf of fellow enterprise members was critical to the maintenance of one's position in the enterprise.

*Id*. at 890–91.

As is evident, each of Roane's murders furthered the drug-trafficking organization. And each was carried out with a firearm. It is impossible that the jury convicted Roane on Counts 6, 9, 12, and 15 without finding that he used a firearm in relation to those murders. A contrary conclusion would simply be inconsistent with the facts of this case and the jury's verdict. As to Count 15, which did not charge an underlying § 848(e) predicate, that count can be easily upheld on the still-valid

VICAR murder of Torrick Brown, Jr. (Count 14).

No reasonable jury could have concluded that Roane used a firearm in furtherance of the assumedly invalid predicate offenses, but not the valid drug-trafficking murder predicates charged in Counts 5, 8, and 11. *See Said*, 26 F.4th at 662–63. The same reasoning applies to the VICAR murder predicates (Counts 7, 10, 13, and 14), which can just as equally support Roane's convictions on Counts 6, 9, 12, and 15. Under *Said*, it is irrelevant that the "record does not indicate which predicates the jury relied on[.]" *Id*. at 662. It is Roane's burden to show that the jury relied *only* on the invalid predicates, and much like the *Said* defendant, "[t]his he cannot do." *Id*. Roane has offered no reason to think "that the jury reached the commonsense-defying conclusion of relying only on those [invalid] predicates[.]" *Id*. Put differently, Roane has not "pointed to any reason why the jury would not have convicted him on Counts [6, 9, 12, or 15] based on at least one of the valid predicates—let alone any evidence that they did not do so." *Id*. Indeed, "the fact that [Roane] can point to nothing more than ambiguity is enough to resolve this case[.]" *Id*. at 662 n.15.

## Conclusion

For the foregoing reasons, the Court should affirm the district court's denial

of Roane's § 2255 motion.

Respectfully submitted,

Jessica D. Aber
United States Attorney


_____/s/_____
Richard D. Cooke
Joseph Attias
Assistant United States Attorneys

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,999 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____

Joseph Attias
Assistant United States Attorney
