**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-5**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD TIPTON, a/k/a Whittey,

Defendant - Appellant.

———————

**No. 23-1**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES H. ROANE, JR., a/k/a J.R.,

Defendant - Appellant.

———————

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  David J. Novak, District Judge.  (3:92-cr-00068-DJN-1; 3:22-cv-00099-DJN; 3:92-cr-00068-DJN-3; 3:22-cv-00098-DJN)

———————

Argued:  September 22, 2023                              Decided:  March 18, 2024

_____

Before WILKINSON, KING, and RUSHING, Circuit Judges.

_____

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Wilkinson and Judge Rushing joined.

_____

**ARGUED: 22-5:**  Gerald Wesley King, Jr., FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina; Jeffrey L. Ertel, FEDERAL DEFENDER PROGRAM, INC., Atlanta, Georgia, for Appellant.  Jessica D. Aber, United States Attorney, Joseph Attias, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

**ARGUED:  23-1:**  Julia Welsh, FEDERAL COMMUNITY DEFENDER OFFICE FOR THE EASTERN DISTRICT OF PENNSYLVANIA, Philadelphia, Pennsylvania, for Appellant.  Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Joanne Heisey, Assistant Federal Public Defender, FEDERAL COMMUNITY DEFENDER OFFICE FOR THE EASTERN DISTRICT OF PENNSYLVANIA, Philadelphia, Pennsylvania, for Appellant.  Jessica D. Aber, United States Attorney, Joseph Attias, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

KING, Circuit Judge:

By this consolidated opinion, we resolve the separate appeals of defendants Richard Tipton (Appeal No. 22-5) and James Roane, Jr. (Appeal No. 23-1). In 1993, Tipton and Roane were each convicted and sentenced to death and multiple years in prison as the result of a drug-related enterprise that also involved firearms, murders, and other racketeering activity they pursued and carried out in eastern Virginia. After mostly unavailing direct appeals, *see United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), and unsuccessful collateral attacks on their multiple sentences, *see United States v. Roane*, 51 F.4th 541, 544-45 (4th Cir. 2022) (recounting extensive litigation history), Tipton and Roane persist in their pursuits of post-conviction relief.

In light of recent Supreme Court decisions, Tipton and Roane now challenge the six 30-year-old sentences that stem from their firearm-related 18 U.S.C. § 924(c) convictions in 1993. Of importance here, § 924(c) criminalizes using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," a federal "crime of violence or drug trafficking crime." *See* 18 U.S.C. § 924(c)(1)(A).[1] In 2019, the Supreme Court ruled in *United States v. Davis*, 139 S. Ct. 2319 (2019), that the statutory definition of a "crime of violence" under § 924(c)(3)(B) — known as the "residual clause" — is

---

[1] A conviction under § 924(c) requires proof of what the courts call a "predicate offense," i.e., a "crime of violence or drug trafficking crime." When Tipton and Roane were convicted in 1993, the authorized penalties for a § 924(c) conviction ranged from five years to life — in addition to any penalty for the predicate offense itself — depending on, e.g., the type of weapon used or carried in the commission of the predicate offense. *See* 18 U.S.C. § 924(c)(1) (1993).

3

unconstitutionally vague.  Consequently, a qualifying "crime of violence" must now satisfy § 924(c)(3)(A), i.e., the "force clause."  On the heels of *Davis*, in its 2021 decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), the Court recognized that a "violent felony," as defined by the force clause of 18 U.S.C. § 924(e)(2)(B)(i), requires proof of a mens rea that is greater than recklessness.  And we have since deemed that mens rea requirement to be applicable to a qualifying "crime of violence" under § 924(c)(3)(A).  *See United States v. Jackson*, 32 F.4th 278, 283 & n.4 (4th Cir. 2022).

In January 2022, following the Supreme Court's decisions in *Davis* and *Borden*, our Court authorized Tipton and Roane to each seek post-conviction relief by filing a successive 28 U.S.C. § 2255 motion in the district court in eastern Virginia.  Thereafter, Tipton and Roane unsuccessfully sought § 2255 relief — from their 1993 sentences under § 924(c) — in the district court proceedings that underlie these appeals.  *See United States v. Tipton*, No. 3:92-cr-00068-DJN-1 (E.D. Va. Oct. 6, 2022), ECF No. 186 (the "Tipton Opinion"); *United States v. Roane*, No. 3:92-cr-00068-DJN-3 (E.D. Va. Nov. 3, 2022), ECF No. 190 (the "Roane Opinion").  In denying Tipton's and Roane's requests for § 2255 relief, the district court also denied their separate and related requests for certificates of appealability.

In April 2023, Tipton and Roane petitioned this Court for certificates of appealability, and those petitions were each granted.  *See In re Tipton*, No. 22-5 (4th Cir. Apr. 26, 2023), ECF No. 25; *In re Roane*, No. 23-1 (4th Cir. Apr. 13, 2023), ECF No. 21.  Although their efforts to secure appellate relief were briefed and argued before us in September 2023 as separate appeals, Tipton and Roane identify and dispute several

identical and closely related factual and legal underpinnings of their § 924(c) sentences. Relying on *Davis* and *Borden*, they each maintain that the predicate offenses used to support their various firearm-related § 924(c) convictions no longer qualify as "crime[s] of violence" under § 924(c)(3).

In these circumstances, we are satisfied to jointly dispose of these related appeals by way of this consolidated opinion. As explained below, we reject Tipton's and Roane's respective challenges to their § 924(c) sentences and affirm the contested judgments of the district court.

## I.

### A.

In the comprehensive 1996 opinion largely rejecting Tipton's and Roane's direct appeals, our distinguished former colleague Judge Phillips carefully summarized the relevant facts underlying the joint 1992 and 1993 prosecutions and jury trial of Tipton and Roane in Richmond. *See Tipton*, 90 F.3d at 868-69. Because we are unable to improve on the comprehensive factual summary compiled and recited by Judge Phillips, that summary is hereby adopted and set forth *in haec verba*. As carefully related in his panel decision:

> Recounted in summary form and in the light most favorable to the Government, the core evidence revealed the following. Tipton, Roane, and Cory Johnson were principal "partners" in a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. The conspiracy's operations began in Trenton, New Jersey where Johnson and Tipton, both from New York City, became members. In August of 1990, the conspiracy expanded its operations to Richmond, Virginia where Roane joined the conspiracy in November of 1991. The Trenton-based operation came to an end on June 4, 1991 when police confiscated a large quantity of crack cocaine

and firearms. In late 1991, the conspiracy's operations were expanded from the Central Gardens area of Richmond to a second area in Richmond called Newtowne.

During the period of the conspiracy's operation, its "partners", including appellants, obtained wholesale quantities of powdered cocaine from suppliers in New York City, converted it by "cooking" into crack cocaine, then packaged it, divided it among themselves, and distributed it through a network of 30-40 street level dealers, "workers." Typically, the appellants and their other partners in the conspiracy's operations took two-thirds of the proceeds realized from street-level sales of their product.

Over a short span of time in early 1992, Tipton, Cory Johnson, and Roane were variously implicated in the murders of ten persons within the Richmond area — all in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the "partners."

On January 4, 1992, Tipton and Roane drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. Once there, Roane grabbed Talley from the rear while Tipton stabbed him repeatedly. The attack lasted three to five minutes and involved the infliction of eighty-four stab wounds to Talley's head, neck, and upper body that killed him.

On the evening of January 13, 1992, Tipton and Roane went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, where Tipton shot Moody twice in the back. After Moody fled by jumping through a window, both Tipton and Roane pursued. Roane, armed with a military-style knife retrieved from an apartment where the knife was kept for co-conspirator Curtis Thorne, caught up with Moody in the front yard of the apartment where he stabbed him eighteen times, killing him.

On the night of January 14, 1992, Roane, Cory Johnson, and a third person retrieved a bag of guns that they had left at an apartment earlier that day. Roane then located Peyton Johnson, another rival drug dealer, at a tavern. Shortly after Roane left the tavern, Cory Johnson entered with another person and fatally shot Peyton Johnson with a semi-automatic weapon.

On January 29, 1992, Roane pulled his car around the corner of an alley, got out of the vehicle, approached Louis Johnson, whom appellant

Johnson thought had threatened him while acting as bodyguard for a rival dealer, and shot him. Cory Johnson and co-conspirator Lance Thomas then got out of Roane's car and began firing at Louis Johnson. As Louis Johnson lay on the ground, either Cory Johnson or Thomas shot him twice at close range. Louis Johnson died from some or all of these gunshot wounds.

On the evening of February 1, 1992, Cory Johnson and Lance Thomas were told that Roane had gone to the apartment of Torrick Brown, with whom Roane had been having trouble. Johnson and Thomas armed themselves with semiautomatic weapons and went to the apartment where they joined appellant Roane outside. The three then knocked on Brown's door and asked his half-sister, Martha McCoy, if Brown was there. She summoned Brown to the door and Cory Johnson, Roane, and Thomas opened fire with semi-automatic weapons, killing Brown and critically wounding McCoy.

In late January, 1992, after being threatened by Cory Johnson for not paying for a supply of crack cocaine, Dorothy Armstrong went to live with her brother, Bobby Long. On February 1, Cory Johnson learned from Jerry Gaiters the location of Long's house. Thereafter, Tipton and an unidentified "young fellow" picked up Gaiters and Cory Johnson who were then driven by Tipton to a house where the group obtained a bag of guns. After dropping off the unidentified third party, the group proceeded to Long's house. Upon arriving at Long's house, Cory Johnson and Gaiters got out of the car and approached the house. While Tipton waited in the car, Cory Johnson and Gaiters went to the front door. When Long opened the door, Cory Johnson opened fire, killing both Dorothy Armstrong and one Anthony Carter. Bobby Long fled out the front door, but was fatally shot by Cory Johnson in the front yard.

In early February 1992, Cory Johnson began to suspect that Linwood Chiles was cooperating with the police. On February 19, 1992, Johnson borrowed Valerie Butler's automobile and arranged to meet with Chiles. That night, Chiles, Curtis Thorne, and sisters Priscilla and Gwen Greene met Cory Johnson and drove off together in Chiles's station wagon. Chiles parked the car in an alley, and Tipton soon drove in behind it in another car, got out, and came up alongside the stationwagon. With Tipton standing by, Cory Johnson told Chiles to place his head on the steering wheel and then shot Chiles twice at close range. Additional shots were fired, killing Thorne and critically wounding both of the Greene sisters. The autopsy report indicated that Thorne had been hit by bullets fired from two different directions.

*Id.*

7

B.

1.

On April 24, 1992, as a result of the above-recited series of firearm-related murders and killings and the associated rampage of other racketeering activity, Tipton, Roane, and five coconspirators were jointly indicted in the Eastern District of Virginia in the operative 33-count Second Superseding Indictment (the "Indictment"). Tipton was charged with 29 separate offenses. At issue in Tipton's present appeal are the sentences imposed on two of his five 18 U.S.C. § 924(c) charges (Counts Twenty and Twenty-Six) for knowingly, willfully, and unlawfully using a firearm during and in relation to a "crime of violence" or a "drug trafficking crime." Those charges were also brought pursuant to § 2 of Title 18, which imposes principal liability on a defendant for aiding, abetting, or causing a federal offense. Of the other 24 charges against Tipton, 13 were alleged as predicate offenses underlying his § 924(c) charges in Counts Twenty and Twenty-Six. The 13 alleged predicate offenses for Counts Twenty and Twenty-Six against Tipton are:

- Five capital murders — in furtherance of a continuing criminal enterprise ("CCE murder") — in Counts Seventeen, Eighteen, Nineteen, Twenty-Four, and Twenty-Five, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2;

- Five charges of murder — as a violent crime in aid of racketeering activity ("VICAR murder") — in Counts Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, and Twenty-Eight, in violation of 18 U.S.C. § 1959 and 18 U.S.C. § 2;

- Two counts of maiming — as a violent crime in aid of racketeering activity ("VICAR maiming") — in Counts Twenty-Nine and Thirty, in violation of 18 U.S.C. § 1959 and 18 U.S.C. § 2; and

8

- A single count of conspiring to possess cocaine base with intent to distribute ("drug distribution conspiracy") in Count One, in violation of 21 U.S.C. § 846.

For his part, Roane was charged in 15 counts of the Indictment. At issue in Roane's appeal are the four sentences stemming from his four firearm-related 18 U.S.C. § 924(c) charges: Counts Six, Nine, Twelve, and Fifteen. Like Tipton's, Roane's § 924(c) charges were also brought under 18 U.S.C. § 2. Of the other 11 charges against Roane, nine were alleged as predicate offenses underlying his four § 924(c) charges. Those nine predicate offenses are: three CCE murder charges (Counts Five, Eight, and Eleven); four VICAR murder charges (Counts Seven, Ten, Thirteen, and Fourteen); a VICAR maiming charge (Count Sixteen); and the drug distribution conspiracy charge (Count One).

## 2.

## a.

In February 1993, following a month-long trial before the highly respected Judge Spencer in Richmond, the jury found Tipton and Roane guilty of multiple offenses. Relevant here, Tipton was convicted on the two firearm-related § 924(c) charges in Counts Twenty and Twenty-Six.[2] As alleged in the Indictment, Count Twenty was supported by seven predicate offenses: the CCE murders of victims Bobby Long, Anthony Carter, and Dorothy Mae Armstrong (Counts Seventeen, Eighteen, and Nineteen); the VICAR murders

---

[2] As related above, Tipton was indicted on five § 924(c) charges. The Court dismissed Count Twelve on the Government's motion, and the jury acquitted Tipton of the § 924(c) charges in Counts Six and Fifteen. Thus, only the two sentences resulting from Tipton's § 924(c) convictions on Counts Twenty and Twenty-Six are being challenged herein.

of those same three victims (Counts Twenty-One, Twenty-Two, and Twenty-Three); and the drug distribution conspiracy (Count One). Count Twenty-Six also was supported by the Count One drug distribution conspiracy, as well as six other predicate offenses: the CCE murders of victims Curtis Thorne and Linwood Chiles (Counts Twenty-Four and Twenty-Five); the VICAR murders of those two victims (Counts Twenty-Seven and Twenty-Eight); and the VICAR maiming of Priscilla and Gwendolyn Greene (Counts Twenty-Nine and Thirty).

Notably, the verdict form did not specify which predicate or predicates the jury relied upon in finding Tipton guilty of the two § 924(c) offenses. In any event, the jury found Tipton guilty of all 13 of the alleged predicate offenses.

On June 1, 1993, the district court, consistent with the jury's recommendations, imposed three separate death sentences on Tipton for two of the aforementioned CCE murders — those of victims Curtis Thorne and Linwood Chiles — plus the Count Three CCE murder of victim Douglas Talley. For the three other CCE murders, and for his six VICAR murders (the five aforementioned VICAR murders plus the Count Four VICAR murder of Douglas Talley), Tipton received nine life sentences, to run concurrently. For his two § 924(c) convictions, Tipton received a five-year sentence on Count Twenty and a 20-year sentence on Count Twenty-Six, running consecutively to his life sentences.

b.

Roane, by contrast, was convicted on four firearm-related § 924(c) charges (Counts Six, Nine, Twelve, and Fifteen), also without a predicate or predicates specified on the verdict form. Relevant to Counts Six, Nine, and Twelve, the jury found Roane guilty of

the following predicate offenses: the CCE murders of victims Douglas Moody, Peyton Johnson, and Louis Johnson (Counts Five, Eight, and Eleven); the corresponding VICAR murders of those three victims (Counts Seven, Ten, and Thirteen); and the drug distribution conspiracy (Count One). Pertinent to Count Fifteen, the jury found Roane guilty of the predicate offenses of the Count One drug distribution conspiracy, plus the VICAR murder of Torrick Brown (Count Fourteen) and the VICAR maiming of Martha McCoy (Count Sixteen).

Roane received a sentence of five years in prison on Count Six. On Counts Nine, Twelve, and Fifteen, he received separate 20-year prison terms, to run concurrently. Those sentences run consecutively to certain other sentences imposed on Roane, however, including the six life sentences imposed for the CCE murders of Peyton and Louis Johnson (Counts Eight and Eleven) and for the VICAR murders of Douglas Moody, Peyton Johnson, Louis Johnson, and Torrick Brown (Counts Seven, Ten, Thirteen, and Fourteen). Roane received his only death sentence for the CCE murder of Douglas Moody (Count Five).

## C.

With the foregoing recitation in mind, we turn to a brief summary of some of Tipton's and Roane's past efforts to secure post-conviction relief.

- In 1993, Tipton and Roane directly appealed their respective convictions and sentences. In 1996, Judge Phillips's opinion affirmed their convictions and sentences, except for the convictions and sentences on the Count One drug distribution conspiracy. Those convictions were vacated under the Double Jeopardy Clause. *See Tipton*, 90 F.3d at 891.

11

- On June 1, 1998, after their unsuccessful direct appeals, Tipton and Roane each sought relief under 28 U.S.C. § 2255, filing motions in the district court to vacate their sentences.[3] The Government sought summary judgment on each of those initial § 2255 motions. The court granted the summary judgment request of the Government, except for two claims interposed by Roane, on which the court granted relief. *See United States v. Tipton*, No. 3:92-cr-00068-JRS (E.D. Va. May 1, 2003), ECF No. 897. On appeal from that decision, we affirmed the district court's rulings in favor of the Government and reversed the relief awarded to Roane. *See United States v. Roane*, 378 F.3d 382 (4th Cir. 2004).

- After their 1998 motions for collateral relief under § 2255 had been denied, but prior to the motions presented here, Tipton and Roane repeatedly and unsuccessfully sought authorizations to file successive § 2255 motions, pursuant to 28 U.S.C. § 2244.

  - For example, Tipton filed three unsuccessful motions for authorization to file successive § 2255 motions to invalidate his enhanced sentences under 18 U.S.C. § 924(c), each of which was denied. *See In re Tipton*, No. 13-8 (4th Cir. Oct. 29, 2013), ECF No. 14; *In re Tipton*, No. 16-7 (4th Cir. June 6, 2016), ECF No. 13; *In re Tipton*, No. 19-2 (4th Cir. May 14, 2019), ECF No. 9.

  - Similarly, Roane filed § 2255 authorization requests in 2009 and 2016, each of which was denied. *See In re Roane*, No. 09-8 (4th Cir. July 13, 2010), ECF No. 24; *In re Roane*, No. 16-6 (4th Cir. June 6, 2016), ECF No. 13.

- In addition to their various unsuccessful § 2255 motions, Tipton and Roane filed separate motions in the district court in 2020 under § 404 of the First Step Act, requesting the court to reduce their respective sentences on their CCE murder and drug distribution convictions. The

---

[3] A brief explanation of § 2255 of Title 28 is warranted. Section 2255 was adopted to establish a statutory avenue for federal prisoners to seek habeas corpus relief, and it provides "the same rights federal prisoners previously enjoyed under the general habeas statutes." *See Jones v. Hendrix*, 599 U.S. 465, 489 (2023); *see also Davis v. United States*, 417 U.S. 333, 343 (1974) ("[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.").

district court declined to reduce those sentences, and we affirmed. *See United States v. Roane*, 51 F.4th 541 (4th Cir. 2022).

## II.

Having summarized the background of Tipton's and Roane's prosecutions and their steadfast efforts to secure relief from their convictions and sentences, we return to the 28 U.S.C. § 2255 motions underlying these appeals. In that regard, Tipton and Roane principally maintain that the predicate offenses for their 18 U.S.C. § 924(c) convictions no longer qualify as "crime[s] of violence" under § 924(c)(3), relying on the Supreme Court's recent decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019), and *Borden v. United States*, 141 S. Ct. 1817 (2021).

## A.

In defining a "crime of violence," § 924(c)(3) of Title 18 spells out the "force clause" and the "residual clause." The force clause provides that a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 924(c)(3)(A). According to the residual clause, a "crime of violence" could instead be a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

In June 2019, the Supreme Court rendered its *Davis* decision and ruled that the definition of a "crime of violence" in § 924(c)(3)(B), i.e., the residual clause, is unconstitutionally vague under due process and separation of powers principles. *See* 139

13

S. Ct. at 2335-36. As a result of *Davis*, a predicate "crime of violence" must now satisfy § 924(c)(3)(A), i.e., the force clause, in order to properly support a § 924(c) conviction. Two years after *Davis*, in its *Borden* decision of June 2021, the Court made a statutory interpretation ruling and recognized that a qualifying "violent felony" under the force clause of 18 U.S.C. § 924(e)(2)(B)(i) requires a mens rea that is greater than recklessness. *See* 141 S. Ct. at 1825. And we have since extended that ruling to a "crime of violence" under § 924(c). *See United States v. Jackson*, 32 F.4th 278, 283 & n.4 (4th Cir. 2022).

In 2020, Tipton and Roane separately applied to this Court for authorizations to file their latest § 2255 motions, at that time seeking relief on the basis of the Supreme Court's *Davis* decision only.[4] In January 2022, following the *Borden* decision, we granted Tipton's and Roane's motions for authorization. We then transferred their § 2255 motions to the district court.

### B.

In February 2022, pursuant to our authorizations, Tipton and Roane filed their 28 U.S.C. § 2255 motions in the district court, which they sought to amend to rely not only on the 2019 *Davis* decision, but also on the 2021 *Borden* decision. The district court granted the requests to amend.

The district court subsequently denied § 2255 relief, however, for reasons explained in the relevant opinions — the Tipton Opinion of October 6, 2022, and the Roane Opinion

---

[4] After Tipton and Roane had initially applied to this Court in 2020 for authorization to proceed with successive § 2255 motions on the basis of *Davis*, we held those motions in abeyance awaiting other proceedings.

14

of November 3, 2022 — ruling that each of Tipton's and Roane's challenged 18 U.S.C. § 924(c) convictions relies on at least one valid predicate offense. Without addressing all of the Indictment's predicates for the § 924(c) charges, the court explained that even if one or more of the predicates were invalid, Tipton's and Roane's § 924(c) convictions would yet be legally sound, in that "the jury *also* relied on a valid predicate." *See* Tipton Opinion 14 (quoting *United States v. Said*, 26 F.4th 653, 659 (4th Cir. 2022)); *see also* Roane Opinion 12 (same).

Addressing the predicate offenses, the Tipton Opinion ruled that Tipton's relevant CCE murder convictions (Counts Seventeen, Eighteen, Nineteen, Twenty-Four, and Twenty-Five) are valid "crime of violence" and "drug trafficking" predicates for his § 924(c) convictions on Counts Twenty and Twenty-Six. Thereafter, the Roane Opinion relied primarily on the Tipton Opinion and concluded that Roane's CCE murder convictions (Counts Five, Eight, and Eleven) are also valid "crime of violence" and "drug trafficking" predicates for three of his four § 924(c) convictions, i.e., those on Counts Six, Nine, and Twelve.

In addition to the offense of CCE murder, the Roane Opinion evaluated and resolved the issue of whether a VICAR murder is a valid predicate offense for a conviction under § 924(c). The Roane Opinion did so because VICAR murder was alleged as a predicate offense for all four of Roane's § 924(c) convictions: Counts Six, Nine, and Twelve, plus Count Fifteen. The Roane Opinion ruled that each of Roane's VICAR murder convictions qualifies as a "crime of violence."

15

C.

In seeking appellate review in this Court, pursuant to 28 U.S.C. § 2253, Tipton and Roane submitted separate requests for certificates of appealability, supported by preliminary briefs that alleged denials of their constitutional rights.[5] We thereafter awarded Tipton and Roane certificates of appealability on the issues argued by them in their motions for such certificates. Having done so, we possess jurisdiction in these appeals pursuant to 28 U.S.C. §§ 1291 and 2253. By way of this consolidated opinion, we will resolve whether the Supreme Court's 2019 decision in *Davis*, informed by the Court's subsequent *Borden* decision in 2021, justify any 28 U.S.C. § 2255 relief for either Tipton or Roane.

III.

We review de novo questions of law, including the denial of constitutional challenges, that are presented in a 28 U.S.C. § 2255 motion. *See United States v. McKinney*, 60 F.4th 188, 191 (4th Cir. 2023). Because the determination of whether a criminal offense qualifies as a predicate "crime of violence" or "drug trafficking crime" under 18 U.S.C. § 924(c) is a legal question, we also review that issue de novo. *See United States v. Evans*, 848 F.3d 242, 245 (4th Cir. 2017).

---

[5] Pursuant to § 2253 of Title 28, an appeal from a final order in a proceeding under § 2255 may not be taken to the court of appeals unless a circuit justice or judge issues a certificate of appealability. And the issuance of such a certificate requires the applicant to make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c).

16

IV.

In their respective 28 U.S.C. § 2255 motions, as certified by us for appeal in these proceedings, Tipton and Roane challenge their 18 U.S.C. § 924(c) sentences pursuant to the legal principles enunciated by the Supreme Court in its *Davis* and *Borden* decisions. *See United States v. Davis*, 139 S. Ct. 2319 (2019); *Borden v. United States*, 141 S. Ct. 1817 (2021). They contend that their § 924(c) convictions must be vacated, and that they are entitled to a remand for resentencing.[6]

A.

As explained earlier, Tipton was convicted of two 18 U.S.C. § 924(c) offenses, alleged in Counts Twenty and Twenty-Six of the Indictment. Roane was convicted of four § 924(c) offenses, alleged in Counts Six, Nine, Twelve, and Fifteen. Each of Tipton's § 924(c) charges was predicated on the following offenses: the drug distribution conspiracy under § 846 of Title 21; a CCE murder under § 848 of Title 21; and a VICAR murder and a VICAR maiming under § 1959(a)(1) of Title 18. Three of Roane's § 924(c) charges — i.e., Counts Six, Nine, and Twelve — were each predicated on the drug distribution conspiracy, a CCE murder, and a VICAR murder. Roane's fourth § 924(c) charge, Count Fifteen, was predicated on the drug distribution conspiracy, a VICAR

---

[6] The parties dispute the remedies that might be available in resentencing proceedings on the § 924(c) convictions if Tipton and Roane were to prevail here. More specifically, Tipton and Roane say that their death penalties could be reconsidered in the district court, potentially leaving each of them with life sentences only. The Government contends, on the other hand, that any such resentencing proceedings would not disturb any death penalties.

murder, and a VICAR maiming.  For each of Tipton's and Roane's § 924(c) charges —

and for each of the predicate offenses except the drug distribution conspiracy — principal

liability for aiding, abetting, and causing the offense was alleged under 18 U.S.C. § 2.

Although the verdict form did not specify which predicate or predicates the jury relied upon

in finding Tipton and Roane guilty of the § 924(c) offenses, the jury found them guilty of

all the alleged predicate offenses.

Pursuant to our recent decision in *United States v. Said*, "a § 924(c) conviction may

stand even if the jury based its verdict on an invalid predicate, so long as the jury *also* relied

on a valid predicate."  *See* 26 F.4th 653, 659 (4th Cir. 2022).  Accordingly, where the

verdict form did not specify which of multiple predicates the jury relied upon in finding

the defendant guilty of a § 924(c) offense, the conviction will be upheld unless the

defendant shows "more than a reasonable possibility" that the conviction rested solely on

an invalid predicate offense.  *Id.* at 661-62.

Relying on the Supreme Court's *Davis* and *Borden* decisions, Tipton and Roane

maintain that none of their predicate offenses qualifies as a § 924(c) "crime of violence."

They also argue that none of their predicate offenses otherwise qualifies as a § 924(c) "drug

trafficking crime" (including the drug distribution conspiracy offense, as their convictions

of that offense were vacated by our Court in 1996 on double jeopardy grounds).  Finally,

addressing the showing required by our *Said* decision, *see* 26 F.4th at 661-62, Tipton and

Roane contend that to the extent any of their § 924(c) charges was supported by both valid

and invalid predicate offenses, there is "more than a reasonable possibility" that the jury's

guilty verdict on that charge rested solely on an invalid predicate offense.

18

B.

In assessing the validity of the predicate offenses underlying Tipton's and Roane's 18 U.S.C. § 924(c) charges, we begin with VICAR murder, as it is the only predicate offense underlying each and every one of the pertinent § 924(c) charges. Specifically, we first consider and decide whether VICAR murder qualifies as a § 924(c) "crime of violence."

1.

At the outset of our analysis, we observe that § 1959 of Title 18, notably entitled "Violent Crimes in Aid of Racketeering Activity" — otherwise known simply as VICAR — was enacted by Congress in 1984 as the violent crime corollary to the RICO Act. The primary purpose of both RICO and VICAR is "to seek the eradication of organized crime in the United States . . . by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *See* Pub. L. No. 91-452, 84 Stat. 922, 923 (1970).

For its part, VICAR was enacted to combat "contract murders and other violent crimes by organized crime figures." *See* S. Rep. No. 98-225, at 306 (1984). Although several of the violent crimes identified and defined by § 1959(a) are also prosecuted by state and local authorities, Congress deemed it appropriate to enact the VICAR statute because of the "Federal Government's strong interest, as recognized in existing statutes, in suppressing the activities of organized criminal enterprises," and the "FBI's experience and network of informants and intelligence" with respect to organized crime enterprises. *See id.* at 305. In other words, VICAR crimes are a unique set of federal crimes.

19

As we recently explained, § 1959(a) "sets forth a series of VICAR offenses ranging from threats to murder." *See United States v. Thomas*, 87 F.4th 267, 272 (4th Cir. 2023). In so doing, the statute provides a range of penalties for

> [w]hoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do.

*See* 18 U.S.C. § 1959(a).  Given its most serious nature, VICAR murder is the only VICAR offense under § 1959(a) that is punishable by death.  *Id.* § 1959(a)(1).

2.

Next, we recognize that in assessing whether a predicate offense qualifies as a "crime of violence" for purposes of 18 U.S.C. § 924(c), we generally apply the categorical approach.  *See United States v. Mathis*, 932 F.3d 242, 264 (4th Cir. 2019).  That "approach focuses on the *elements* of the [predicate] offense," and not on the defendant's particular conduct.  *Id.* (internal quotation marks omitted).

We apply the modified categorical approach, however, when the relevant statute is "divisible," i.e., when the statute is "comprised of 'multiple, alternative versions of the crime.'"  *See Mathis*, 932 F.3d at 264 (quoting *Descamps v. United States*, 570 U.S. 254, 262 (2013)).  In applying the modified categorical approach, we may look to the indictment or jury instructions, and also to comparable judicial records, in order to determine "which of the statute's alternative elements formed the basis of the defendant's prior conviction."

*See United States v. Bryant*, 949 F.3d 168, 173 (4th Cir. 2020) (quoting *Descamps*, 570 U.S. at 262).

Of importance in our resolution of these appeals, this Court has already determined § 1959(a) of Title 18 to be a divisible statute subject to the modified categorical approach. *See Thomas*, 87 F.4th at 272 (specifying that § 1959(a) "sets forth multiple, alternative versions of a crime with distinct elements"). We are therefore authorized to review the Indictment and other approved documents to identify the VICAR offense or offenses of which Tipton and Roane were convicted. Such review confirms that Tipton was convicted of VICAR murder as charged in Counts Twenty-One, Twenty-Two, and Twenty Three (and as alleged as predicates for the § 924(c) offense charged in County Twenty); that Tipton was also convicted of VICAR murder as charged in Counts Twenty-Seven and Twenty-Eight (and as alleged as predicates for the § 924(c) offense charged in County Twenty-Six); and that Roane was convicted of VICAR murder as charged in Counts Seven, Ten, Thirteen, and Fourteen (and as alleged predicates for the § 924(c) offenses alleged in Counts Six, Nine, Twelve, and Fifteen).

In recognizing that Tipton and Roane were convicted of VICAR murder, we reject their contention that they are entitled to a presumption that they were instead convicted of the less serious — and uncharged — § 1959(a) offense of conspiracy to commit VICAR murder. That contention relies on the district court's instruction during their 1993 trial that the jury could convict them of VICAR murder if it found that they "did knowingly and

intentionally commit *or conspire to commit* the crime charged in the particular count under consideration." *See* J.A. 1525 (emphasis added).[7]

According to Tipton and Roane, the foregoing instruction creates an ambiguity as to whether they were convicted of VICAR murder or conspiracy to commit VICAR murder. And as we have explained, where "we conclude that the statute is divisible but are unable to discern which alternative served as the basis for the defendant's prior conviction, we assume that the conviction was for the 'least serious' conduct encompassed by the statute and we apply the categorical approach to that alternative." *See United States v. Redd*, 85 F.4th 153, 162 (4th Cir. 2023) (quoting *United States v. Vann*, 660 F.3d 771, 775 (4th Cir. 2011) (en banc) (per curiam)). Tipton and Roane identify conspiracy to commit VICAR murder as the "least serious" alternative based on our precedents recognizing that conspiracy does not categorically qualify as a "crime of violence" under the force clause of § 924(c)(3)(A). *See, e.g.*, *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019) (en banc).

We conclude, however, that although jury instructions may be consulted in determining the basis of a defendant's prior conviction, the instruction at issue herein is wholly insufficient to engender uncertainty as to whether Tipton and Roane were convicted of VICAR murder or conspiracy to commit VICAR murder. Not only were the relevant charges in the Indictment limited to VICAR murder, but Tipton's and Roane's respective

---

[7] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in Tipton's appeal (Appeal No. 22-5).

criminal judgments reflect that they received life sentences on all the relevant counts —

the minimum sentence required for VICAR murder under § 1959(a), which mandates a

sentence of "death or life imprisonment." *See* 18 U.S.C. § 1959(a)(1). Had Tipton and

Roane instead been convicted of conspiracy to commit VICAR murder, their sentences

would have been limited to "imprisonment for not more than ten years." *See id.*

§ 1959(a)(5). It is therefore clear that Tipton and Roane were convicted of VICAR murder,

and not conspiracy to commit VICAR murder. *Cf. United States v. McDaniel*, 85 F.4th

176, 189 (4th Cir. 2023) (relying on criminal judgment, along with charging instrument

and plea agreement, to determine offense of conviction).

3.

That brings us squarely to the question of whether VICAR murder constitutes an 18

U.S.C. § 924(c) "crime of violence." In the wake of the Supreme Court's *Davis* and *Borden*

decisions, a qualifying "crime of violence" must satisfy the force clause of § 924(c)(3)(A)

and have a mens rea greater than recklessness. That is,

> [a]s it stands now, to qualify as a crime of violence under § 924(c), an offense must "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another" and that force must be applied with a mens rea greater than recklessness. Both of these things are necessary.

*See Thomas*, 87 F.4th at 270 (second alteration in original) (quoting 18 U.S.C.

§ 924(c)(3)(A)). We address the requirements for a § 924(c) "crime of violence" in turn.

a.

In assessing whether a predicate offense satisfies the force clause of § 924(c)(3)(A),

we examine "whether the statutory elements of the offense necessarily require the use,

23

attempted use, or threatened use of physical force." *See United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc). We also bear in mind that, as the Supreme Court has recognized, the use of physical force "means *violent* force — that is, force capable of causing physical pain or injury to another person." *See Johnson v. United States*, 599 U.S. 133, 140 (2010).

Consistent with § 1959(a) of Title 18, our Court has described the elements of VICAR murder as follows:

> VICAR murder requires: (1) there be an "enterprise" as defined in 18 U.S.C. § 1959(b)(2); (2) the enterprise be engaged in "racketeering activity," as defined in § 1961; (3) the defendant committed a murder; (4) the murder violated state or federal law; and (5) the murder was committed for a pecuniary purpose or for the purpose of gaining entrance to or maintaining or increasing position in the enterprise.

*See United States v. Ortiz-Orellana*, 90 F.4th 689, 701 (4th Cir. 2024) (alteration and internal quotation marks omitted). The key elements here are *Ortiz-Orellana*'s third, which we will refer to as the "murder element," and fifth, which we will shorthand as the "purpose element." Because of those elements, we conclude that VICAR murder necessarily requires the use of violent force and thereby satisfies the § 924(c) force clause.

In explaining why that is so, it is notable that when Congress enacted the § 924(c) force clause, the crime of murder was an offense of utmost concern. *See* H.R. Rep. No. 849, 99th Cong., 2d Sess. 3 (recognizing that the § 924(c) force clause offenses "would include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc."). Moreover, we have ruled that the 18 U.S.C. § 1111(a) offenses of premeditated first-degree murder and second-degree retaliatory murder are § 924(c) crimes

24

of violence. *See United States v. Jackson*, 32 F.4th 278, 287 (4th Cir. 2022); *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017). That was because "to commit federal premeditated first-degree murder, a death-results crime, is to intentionally inflict the greatest physical injury imaginable — death." *See Jackson*, 32 F.4th at 287. Similarly, a second-degree retaliatory murder cannot be committed without intentionally "applying direct force" or intentionally "plac[ing] the victim in the path of an inevitable force." *See Irby*, 858 F.3d at 236.

As for VICAR murder, the murder element and the purpose element mean there must be an intentional murder. That is, the murder must intentionally be "committed for a pecuniary purpose or for the purpose of gaining entrance to or maintaining or increasing position in the enterprise." *See Ortiz-Orellana*, 90 F.4th at 701 (alteration and internal quotation marks omitted); *see also United States v. Manley*, 52 F.4th 143, 152 (4th Cir. 2022) (Niemeyer, J., concurring) ("VICAR's purpose element requires that the defendant commit the assault or murder for the purpose of gaining entrance to or maintaining or increasing position in the enterprise, *not that the defendant commit any act with that purpose that may then have the unintended consequences of resulting in assault or murder*." (internal quotation marks omitted)). And pursuant to our precedents, it is beyond dispute that an intentional murder necessarily requires the use of violent force, in satisfaction of the § 924(c) force clause.[8]

---

[8] To be clear, we rule today that because of VICAR's purpose element, a felony murder — i.e., a murder that may be unintentionally committed in the perpetration or (Continued)

25

b.

Turning to *Borden*'s mens rea requirement, we inquire whether the predicate offense has a mens rea greater than recklessness, i.e., whether the "use of force must be 'purposeful or knowing.'" *See Jackson*, 32 F.4th at 284 (quoting *Borden*, 141 S. Ct. at 1828)).  Of course, as we have already explained, the elements of VICAR murder include what we call the "purpose element," under which the murder must be "committed for a pecuniary purpose or for the purpose of gaining entrance to or maintaining or increasing position in the enterprise." *See Ortiz-Orellana*, 90 F.4th at 701 (alteration and internal quotation marks omitted).  As such, the use of force in a VICAR murder is both purposeful and knowing, for when a person "murders to gain a personal collateral advantage with an enterprise, he makes a decision — a deliberate choice — to carry out . . . the murder to demonstrate his worth to the enterprise." *See Manley*, 52 F.4th at 152 (Niemeyer, J., concurring).

Indeed, in the words of Judge Wilkinson, "[i]t would be indefensible to hold that a defendant who committed [a VICAR murder or another VICAR offense] for the purpose of improving his position in a racketeering enterprise did so recklessly." *See Thomas*, 87 F.4th at 274.  Simply put, VICAR offenses "are deliberate and purposeful machinations to raise one's clout in a criminal enterprise." *Id.*  VICAR murder therefore carries with it a requisite mens rea that is greater than recklessness, as required by *Borden*.

---

attempted perpetration of another felony offense, *see Jackson*, 32 F.4th at 286 — cannot constitute a VICAR murder.  The parties have suggested to the contrary, but we disagree.

26

\* \* \*

In sum, we conclude that VICAR murder satisfies both the force clause of § 924(c)(3)(A) and *Borden*'s mens rea requirement. Accordingly, we are satisfied that VICAR murder constitutes a § 924(c) "crime of violence."

4.

Nevertheless, Tipton and Roane argue that none of their VICAR murder offenses can be said to qualify as an 18 U.S.C. § 924(c) "crime of violence" because of a defect in the Indictment, as well as the jury instructions, that renders it impossible to conduct the proper analysis — that defect being the failure to identify the state or federal law that each of the murders allegedly violated. Their argument concerns the fourth element of VICAR murder described in *Ortiz-Orellana* — that "the murder violated state or federal law," *see* 90 F.4th at 701 — which we now call the "underlying-law element." As Tipton and Roane would have it, the proper § 924(c) "crime of violence" analysis of their VICAR murder offenses requires an examination of the elements of the state or federal law at issue. But because the Indictment and jury instructions did not specify any state or federal law for purposes of the underlying-law element, that analysis cannot be conducted.[9]

---

[9] Our review of the Indictment confirms that it is true, as Tipton and Roane assert, that the VICAR murder charges did not specify any state or federal law that the murders allegedly violated. Those charges are exemplified by Tipton's VICAR murder charge with respect to victim Bobby Long in Count Twenty-One. In pertinent part, it alleged

> that on or about February 1, 1992, at Richmond, Virginia, . . . RICHARD TIPTON . . . did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an

(Continued)

Unfortunately for Tipton and Roane, in our recent *Thomas* decision, this Court considered — and roundly rejected — the premise of their argument. *See* 87 F.4th at 274-75. That is, *Thomas* rejected the proposition that the proper § 924(c) "crime of violence" analysis of a VICAR offense requires a court to "look through" the VICAR statute to the underlying violation of state or federal law. *Id.*

The VICAR offense being analyzed in *Thomas* was VICAR assault with a dangerous weapon, which has essentially the same five elements described in *Ortiz-Orellana* for VICAR murder, except for the requirement of "assault with a dangerous weapon" rather than "murder." *See Thomas*, 87 F.4th at 272-73 (relating that "the elements necessary for a conviction of VICAR assault with a dangerous weapon are: (1) that there exists a racketeering enterprise; (2) that the enterprise be engaged in racketeering activity; (3) that the defendant have committed an assault with a dangerous weapon; (4) that the assault have violated state or federal law; and (5) that the assault have been committed for a racketeering purpose" (internal quotation marks omitted)). Employing an analysis similar to our assessment of VICAR murder above, *Thomas* concluded that because of the

---

enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

*See* J.A. 76-77.

28

third and fifth elements, VICAR assault with a dangerous weapon qualifies as a § 924(c) "crime of violence." *See id.* at 273-74.

Much like Tipton and Roane now do herein, however, the *Thomas* defendant argued that we were required to focus instead on the fourth element — the underlying-law element — and subject the federal or state law at issue to the § 924(c) "crime of violence" analysis. *See Thomas*, 87 F.4th at 274. In Thomas's case, that would have meant "looking through" the VICAR statute to two Virginia statutes alleged in his indictment as the state laws violated by his assault with a danger weapon. *See id.* The *Thomas* decision rejected Thomas's argument for "conflat[ing] the predicate requirements of § 924(c) (which requires that its predicate qualify as a crime of violence) and the VICAR statute (which does not)." *Id.* Additionally, *Thomas* explained:

> To qualify as a "crime of violence" for purposes of § 924(c), an offense must "ha[ve] as *an* element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). The fact that the statute's text speaks so explicitly in terms of a single element is important. If one element of an offense satisfies the force clause, it becomes superfluous to inquire whether other elements likewise meet the requirement.

> The VICAR statute makes it a crime to commit any of the statute's enumerated offenses "in violation of the laws of any State or the United States." 18 U.S.C. § 1959(a). We have interpreted this language to mean that one element of a VICAR conviction is that the defendant committed the enumerated federal offense, and another is that the defendant's conduct violated an independent state or federal law. As established above, federal assault with a dangerous weapon easily qualifies as a crime of violence. That this element of VICAR assault with a dangerous weapon qualifies as a crime of violence is sufficient in and of itself to render the offense a crime of violence, we need not progress to the state-law predicates.

29

*Id.* at 274-75. As *Thomas* was careful to explain, "[t]hat is not to say that courts can never look at the underlying state-law predicates." *Id.* at 275. "But where, as here, the generic federal offense standing alone can satisfy the crime-of-violence requirements, courts need not double their work by looking to the underlying predicates as well." *Id.*[10]

Pursuant to *Thomas*, we need only decide whether the generic federal murder offense enumerated in the VICAR statute qualifies as a § 924(c) "crime of violence." And we have already answered that question in the affirmative. As we recognized in *Thomas*, that ruling "is sufficient in and of itself to render [VICAR murder] a crime of violence." *See* 87 F.4th at 275. We therefore reject Tipton's and Roane's argument that we must "look through" the VICAR statute to the underlying state or federal law that each of their murders allegedly violated, and thus it matters not today that no such state or federal law was identified in the Indictment.[11]

---

[10] Our *Thomas* decision was rendered in November 2023, more than a year after the district court denied Tipton's and Roane's motions for habeas corpus relief. In assessing whether Roane's VICAR murder offenses are valid § 924(c) predicates, the court — lacking the benefit of *Thomas* and out of an "abundance of caution" — identified and assessed three state and federal laws that were possibly violated. *See* Roane Opinion 17-20. That is, the court "looked through" the VICAR statute to Virginia's murder statute, in Virginia Code section 18.2-32; the statutory definition of a federal murder, in 18 U.S.C. § 1111(a); and a generally accepted common law definition of a murder offense. According to the Roane Opinion, each of those murder offenses qualifies as a § 924(c) "crime of violence."

[11] Notably, neither Tipton nor Roane has heretofore sought to challenge the sufficiency of the Indictment's VICAR murder charges, either before or during their 1993 trial, on direct appeal, or in any other collateral proceedings. As their lawyers have acknowledged, they are thereby limited in these successive 28 U.S.C. § 2255 proceedings to arguing that defects in the Indictment render it impossible to conduct a proper analysis of VICAR murder as a predicate for their firearm-related § 924(c) offenses. They do not (Continued)

30

C.

Having concluded that VICAR murder qualifies as a "crime of violence" under 18 U.S.C. § 924(c), we next determine whether Tipton and Roane have demonstrated "more than a reasonable possibility" that their § 924(c) convictions rested solely on some other, invalid predicate offense. *See Said*, 26 F.4th at 661-62. In other words, we assess whether there is more than a reasonable possibility that the jury did *not* rely on VICAR murder as a predicate for any of the § 924(c) convictions. If no such possibility has been shown, we can affirm the district court's denial of 28 U.S.C. § 2255 relief without considering the validity of the other predicates, i.e., the drug distribution conspiracy, CCE murder, and VICAR maiming offenses. *Cf. United States v. Draven*, 77 F.4th 307, 318-20 (4th Cir. 2023) (explaining that where first predicate was ruled valid and defendant failed to argue or show more than reasonable possibility that jury relied only on second predicate, there was no need to decide validity of second predicate).

We emphasize that "mere uncertainty as to which predicate or predicates the jury relied on when it found the defendant guilty of the § 924(c) counts does not suffice to demonstrate . . . the sort of substantial and injurious error required for habeas relief." *See Said*, 26 F.4th at 661 (alterations and internal quotation marks omitted). So, even where, as here, the verdict form did not specify which predicate or predicates the jury found, "that

---

seek, e.g., the vacatur of their various VICAR murder convictions on the basis of defective charges. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (recognizing the high bar for raising a habeas corpus claim when "a defendant has procedurally defaulted [the] claim by failing to raise it on direct review").

31

sort of ambiguity is not enough." *Id.* at 662. Moreover, where, as here, the jury found the defendant guilty "of all the possible predicate theories" — i.e., "every charge" of a substantive offense also alleged as a § 924(c) predicate — the defendant must "point[] to ways in which those individual charges [can] be split into valid and invalid predicates." *Id.* at 663.

In seeking to show more than a reasonable possibility that the jury did not rely on VICAR murder as a predicate for their § 924(c) convictions, Tipton and Roane proffer several theories, none of which are availing. For example, once again invoking the jury instruction advising that they could be convicted for "conspir[ing] to commit" VICAR murder, *see* J.A. 1525, Tipton and Roane assert a likelihood that the jury found them guilty not of VICAR murder, but of the invalid predicate offense of conspiracy to commit VICAR murder.

In addition to other problems with the instruction-based theory, *see supra* Part IV.B.2, it is belied by the trial evidence. *See United States v. Ali*, 991 F.3d 561, 575 (4th Cir. 2021) (explaining that the inquiry into whether the jury relied upon a certain § 924(c) predicate "is a case-specific and fact-intensive determination" that may involve reviewing, inter alia, the jury instructions and the trial evidence (internal quotation marks omitted)). That is, there was compelling and substantial proof that Tipton and Roane did more than simply conspire to commit VICAR murders. Indeed, as recounted in Judge Phillips's 1996 opinion resolving Tipton's and Roane's direct appeals, the trial evidence was wholly consistent with the Indictment's allegations that Tipton and Roane personally committed, and aided and abetted, the charged VICAR murder offenses. *See United States v. Tipton*,

32

90 F.3d 861, 868-69 (4th Cir. 1996); *see also Ali*, 991 F.3d at 576 (perceiving inadequate uncertainty as to whether jury convicted defendant of conspiracy or aiding and abetting where there was "strong proof that [defendant] did more than simply conspire to commit robberies but that he assisted their commission").

Another theory proffered by Tipton and Roane to demonstrate more than a reasonable possibility that their § 924(c) convictions did not rest on VICAR murder predicates, is the trial evidence that it was other codefendants — and not Tipton and Roane themselves — who used firearms in committing the VICAR murders. That theory ignores, however, that Tipton and Roane were charged not only with aiding and abetting the VICAR murder offenses, but also with aiding and abetting the firearm-related § 924(c) offenses. And there was ample evidence that Tipton and Roane at least aided and abetted the § 924(c) offenses committed in the course of the VICAR murders. *See United States v. Benson*, 957 F.3d 218, 237 (4th Cir. 2020) ("To prove aiding and abetting under § 924(c), the Government must show 'that the defendant actively participated in the underlying . . . violent crime with *advance knowledge* that a confederate would use or carry a gun during the crime's commission.'" (alteration in original) (quoting *Rosemond v. United States*, 572 U.S. 65, 67 (2014))).

In these circumstances, Tipton and Roane have failed to demonstrate more than a reasonable possibility that the jury did *not* rely on the valid VICAR murder predicate for any of their § 924(c) convictions. Consequently, we reject their challenges to the sentences resulting from those convictions without reaching and deciding the validity of any other alleged § 924(c) predicate.

V.

Pursuant to the foregoing, we affirm the district court's denials of the 28 U.S.C. § 2255 relief being sought by Tipton and Roane in these proceedings.

No. 22-5 — *AFFIRMED*

No. 23-1 — *AFFIRMED*